# Harbison-Walker Refractories Company *v.* Stanton, Appellant.

*Contracts—Restraint of trade—Sale of business—Monopoly—Interstate commerce.*

1. A covenant in a contract for the sale of a brick manufacturing plant, which provides that the seller shall not engage in manufacturing brick of the kind made by the plant, in five different states for a period of fifteen years, without the consent of the purchaser, is not illegal, as being broader than is necessary to protect the business sold; nor does it create a monopoly void as against public policy and not enforceable in equity; nor is it void as in violation of the Sherman anti-trust law.

2. The presumption is that contracts are legal, not illegal, and the burden is on him who sets up illegality as a defense in a suit to enforce a contract to show how and why it is unlawful.

3. The anti-trust statute was not intended to affect contracts which have a remote and indirect bearing upon commerce between the states.

4. The Sherman anti-trust act has no application where the contract sought to be declared illegal concerns a legitimate business transaction and the unlawful restraint complained of is only incidental or collateral.

Argued Nov. 4, 1909. Appeal, No. 160, Oct. T., 1909, by defendant, from decree of C. P. Allegheny Co., April T., 1908, No. 1,067, on bill in equity in case of Harbison-Walker Refractories Company v. William A. Stanton. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

MILLER, J., specially presiding found the facts to be as follows:

The bill is for an injunction to restrain the defendant from the business of manufacturing or buying, selling or dealing in silica or clay fire brick in the states of Pennsylvania, Kentucky, New Jersey, Maryland and Ohio for a period of fifteen years from July 1, 1902, alleging he so contracted when with others he sold to the plaintiff the works of the Basic Brick Company for a consideration of $300,000, and that he is vio-

lating the contract by engaging in the sales of brick for other manufacturers.

### FINDINGS OF FACT.

1. Prior to May 1, 1902, the defendant was the president and majority shareholder of the capital stock of the Basic Brick Company, a corporation under the laws of Pennsylvania, engaged in the manufacture of silica brick at Johnstown, Pa. The brick so manufactured were sold through the Fayette Brick Company in Pennsylvania, Kentucky, New Jersey, Maryland, Ohio and other states.

2. On May 1, 1902, the defendant, as president and shareholder in said Basic Brick Company, entered into a written optional contract, later duly accepted, with Thomas L. Chadbourne, Jr., as is shown by exhibit "A," attached to plaintiff's bill and made part hereof. This contract, inter alia, recites: "Services performed in the promotion of a consolidation of the fire brick manufacturers of the state of Pennsylvania," and then provides that in consideration of $300,000 the company and its shareholders will convey all the property, shares of stock, interests and assets, as generally shown in the schedule thereto attached, with the following distinct provision:

"Article 5. In consideration of the execution of this agreement by the consolidation purchaser, and by the vendors severally and in the event of the purchase of, and payment for, said property upon the terms of this agreement, and in further consideration of such purchase and payment, the vendors severally and expressly covenant, and agree with the consolidation purchaser, his heirs, executors, administrators, survivors or assigns, that they will not, directly or indirectly, individually or as officers, directors or agents of any corporation, firm or individual, engage or be interested in the business of manufacturing, buying, selling or dealing in silica or clay fire brick in the states of Pennsylvania, Kentucky, New Jersey, Maryland or Ohio for a period of fifteen years from and after the date of such purchase and payment, except with the consent, or in the employment of the said Brick Company or the parties to whom this contract may be assigned by the

consolidation purchaser, it being understood and agreed that the vendors' good will is one of the essential considerations for the execution of this contract by the consolidation purchaser. They are, however, in no way restricted in the manufacture of Magnesite brick, or dealing in Magnesite brick or any article made in whole or in part from Magnesite."

In June of the same year the defendant with other shareholders made a similar contract for the sale of the Fayette Manufacturing Company, a corporation dealing in the manufacture and sale of magnesite brick, for the consideration of $750,000, with the same provision, art. 5, as above set forth.

3. In said contract Chadbourne reserved the right to make the proposed purchase for a corporation to be designated as the brick company; this corporation, known as the Harbison-Walker Refractories Company, the plaintiff, by assignment from Chadbourne, became the assignee and performed the said contract; it paid the entire consideration through Chadbourne, took deed direct for all the real estate of the Basic Brick Company, took possession of all its personal estate, performed all its outstanding contracts, and for a time operated the Basic Brick Works at Johnstown.

Later, some four or five years ago, it ceased operations at Johnstown, dismantled the plant there, and from that time has done no business under the name of the Basic Brick Company, and has manufactured no brick there or elsewhere by virtue of the title acquired from the Basic Brick Company.

4. In July, 1902, after the plaintiff company had acquired the plant and stock of the Fayette Manufacturing Company it employed the defendant as its sales agent at a salary of $12,000 per annum. He resigned this office in September, 1902, and engaged in other business, continuing, however, as a director in the plaintiff company. From July, 1903, to January, 1905, he was carried on the pay roll of the plaintiff company at a salary of $4,800 per year, payable monthly, with no assigned duties; during that time he made two trips to Europe for the plaintiff company, for which he was paid $10,000 and expenses.

Beginning with January, 1905, he was re-employed as sales

agent and assistant to the president of the plaintiff company at the former salary of $12,000 per year; this was afterwards increased to $16,000 per year, and so continued to January, 1908, when his resignation was requested, tendered and accepted.

5. Since his dismissal he has been engaged in soliciting orders and making sales as an agent for a number of existing independent manufacturers of fire clay and silica brick, most of which are in Pennsylvania; sales made by him amount to about 20,000,000 brick of all kinds, aggregating in value about $360,000, and are made principally to Pennsylvania consumers, among whom are some of plaintiff's customers.

6. While the purpose of the purchase of the basic brick plant was the promotion of the consolidation of the fire brick manufacturers of Pennsylvania, as a result of which it did acquire three of the six largest manufacturing concerns engaged in the manufacture of silica brick, and subsequently acquired other concerns engaged in other lines of manufacture, so that it controls from sixty to seventy per cent of this class of brick manufactured and sold in Pennsylvania and elsewhere, and did increase the price about ten per cent after its acquisition of the various plants, the weight of the testimony does not justify finding as a fact that the plaintiff constitutes a monopoly and controls prices and products in restraint of trade.

### DECREE.

And now, to wit, July 13, 1909, this cause came on to be heard at the above term, and was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed as follows: That the defendant, William A. Stanton, his agents, servants and employees, be and are hereby enjoined and restrained from engaging or being interested in, either directly or indirectly, individually or as officer, director or agent of any corporation, firm or individual, the business of manufacturing, buying, selling or dealing in silica or clay fire brick in the states of Pennsylvania, Kentucky, New Jersey, Maryland and Ohio until after June 30, 1917.

Also that defendant pay the costs thus far incurred in this proceeding.

*Error assigned* was the decree of the court.

*Willis F. McCook*, with him *B. J. Jarrett*, for appellant.—
The covenant is to abstain from manufacturing, buying, selling
and dealing in silica and fire clay brick in five states named.
The business sold was that of manufacturing silica brick only.
The covenant exceeds the business sold. It is unnecessary
and unreasonable for its protection and is therefore void:
Henry Leetham & Sons, Limited, v. Johnstone-White, L. R.
(1907), 1 Ch. Div. 322; Lufkin Rule Company v. Fringeli, 57
Ohio, 596 (49 N. E. Repr. 1030); Fleckenstein Brothers Com-
pany v. Fleckenstein, 71 Atl. Repr. 265; Nester v. Brewing
Company, 161 Pa. 473; Mandeville v. Harman, 7 Atl. Repr.
37; United States v. Addyston Pipe & Steel Co., 85 Fed. Repr.
271; Townsend v. Jarman, L. R. (1900), 2 Ch. Div. 698.

The contract sued on is a part of a plan or scheme to buy out
and consolidate into the plaintiff substantially all of the manu-
facturers of silica brick in America. At that time all of the
materials out of which silica brick were made were found in
Pennsylvania and all of the works making them were located
in that state. The scheme also included covenants from all of
the persons interested in and having acquaintance with that
business not to engage in it thereafter except in the service of
the plaintiff. Therefore the contract sued on is in general re-
straint of trade and is part of a plan to create a substantial
monopoly in the business: Monongahela River Consol. Coal,
etc., Co. v. Jutte, 210 Pa. 288; Harding v. American Glucose
Co., 182 Ill. 551 (55 N. E. Repr. 577); Cummings v. Union
Blue Stone Co., 164 N. Y. 401 (58 N. E. Repr. 525); Cohen v.
Berlin & Jones Envelope Co., 56 N. Y. Supp. 588; Craft v. Mc-
Conoughy, 79 Ill. 346; People v. Chicago Gas Trust Co., 130
Ill. 268 (22 N. E. Repr. 798); Richardson v. Buhl, 77 Mich.
632 (43 N. W. Repr. 1102); United States v. E. C. Knight Co.,
156 U. S. 1 (15 Sup. Ct. Repr. 249).

The covenant involved in this case is a violation of the Sher-
man anti-trust act: Addyston Pipe & Steel Co. v. United States,
175 U. S. 211 (20 Sup. Ct. Repr. 96); Swift & Co. v. United
States, 196 U. S. 375 (25 Sup. Ct. Repr. 276); Montague &

Co. v. Lowry, 193 U. S. 38 (24 Sup. Ct. Repr. 307); Wheeler Stenzel Co. v. National Window Glass Jobbers Asso., 152 Fed. Repr. 864.

*John M. Freeman,* with him *James E. MacCloskey* and *D. T. Watson,* for appellee.—Clay fire brick and silica fire brick are used for the same purposes, are sold to the same customers, and compete with each other; and the covenant of appellant not to engage in either the silica or clay fire brick business is not broader than is necessary to protect the purchaser in the enjoyment of the thing sold: Anchor Electric Co. v. Hawkes, 171 Mass. 101 (50 N. E. Repr. 509); Harris v. Theus, 149 Ala. 133 (43 So. Repr. 131); United Shoe Machinery Co. v. Kimball, 193 Mass. 351 (79 N. E. Repr. 790); Oakdale Manufacturing Co. v. Garst, 18 R. I. 484 (28 Atl. Repr. 973); Thermometer Co. v. Pool, 51 Hun, 157; Nordenfelt v. Maxim, etc., Co., L. R. (1894), A. C. 535; Fisheries Co. v. Lennen, 116 Fed. Repr. 217; Pittsburg Stove & Range Co. v. Pennsylvania Stove Co., 208 Pa. 37; McClurg's App., 58 Pa. 51; Monongahela River Consol. Coal, etc., Co. v. Jutte, 210 Pa. 288; Kradwell v. Thiesen, 131 Wis. 97 (111 N. W. Repr. 233); Magnolia Metal Co. v. Price, 65 N. Y. App. Div. 276.

The plaintiff company is not a monopoly at common law, nor does it in any way unlawfully restrain trade or competition: Pettibone v. United States, 148 U. S. 197 (13 Sup. Ct. Repr. 542); United States v. Trans-Missouri Freight Assn., 58 Fed. Repr. 58; Herriman v. Menzies, 115 Cal. 16 (44 Pac. Repr. 660); United States v. Patterson, 55 Fed. Repr. 605; United States v. American Tobacco Co., 164 Fed. Repr. 700; West Virginia Transportation Co. v. Standard Oil Co., 50 W. Va. 611 (40 S. E. Repr. 591); Fonotipia, Limited, v. Bradley, 171 Fed. Repr. 951.

It seems quite clear that the Sherman anti-trust act was not designed or intended to affect a contract by which a party in the sale of a business covenanted not to enter into that or similar business within certain specified localities: Cincinnati, etc., Packet Co. v. Bay, 200 U. S. 179 (26 Sup. Ct. Repr. 208); Anderson v. United States, 171 U. S. 604 (19 Sup. Ct. Repr.

50); Hopkins v. United States, 171 U. S. 578 (19 Sup. Ct. Repr. 40); United States v. Joint-Traffic Assn., 171 U. S. 505 (19 Sup. Ct. Repr. 25); Field v. Barber Asphalt Paving Co., 194 U. S. 618 (24 Sup. Ct. Repr. 784).

Opinion by Mr. Justice Elkin, January 3, 1910:

The final decree entered by the court below is in the precise terms of the covenant to enforce which this bill was filed. It necessarily follows that if the parties were competent to make the covenant in the first instance and the subject-matter thereof is lawful, and no policy of the law or statutory requirement is violated, the court committed no error in enjoining the defendant from doing those things which he had covenanted not to do during the period fixed by the contract. The learned counsel for appellant ask if a contract to refrain from business is valid and enforceable in equity, where the scope of the covenant is broader than is necessary to protect the business sold. As an abstract proposition of law this inquiry may be answered in the negative, but it does not follow that the rule invoked should be applied under the facts of a particular case. In the case at bar there does not seem to be any valid ground to sustain the rule relied on. The learned judge who heard the case in the first instance and who considered all of these questions with painstaking care has clearly pointed out that the scope of the covenant was not broader than was reasonably necessary to protect the business sold, and in this conclusion we all concur. We have examined the cases relied on by appellant which hold that contracts in partial restraint of trade to be valid must be no more extensive than is necessary for the protection of the purchaser in the enjoyment of the business purchased, but find nothing therein stated or decided which would deny to the appellee company the benefit of the covenant for which it gave an ample consideration, and which appellant in good conscience as well as legal right should observe. It is further contended for appellant that the contract of which the covenant sought to be enforced is a part was intended to and in point of fact does create a monopoly in the business affected and is therefore void as

against public policy and not enforceable in equity. The answer to this position by the court below was that neither in contemplation of law nor as a matter of fact did the contract in question create a monopoly in the sense of being an unlawful combination in restraint of trade. In this conclusion we also concur. Under the facts found by the chancellor and fully sustained by the evidence there was no monopoly of the business affected by the absolute purchase of the properties which passed to the consolidated company either in the etymological or legal sense. On this question the present case is absolutely ruled, as we view the facts, by Monongahela River Consol. Coal & Coke Company v. Jutte, 210 Pa. 288. That case was ably presented by counsel and fully considered by this court, with the result that the contention of the appellant there on the question of monopoly was not sustained. The rule there announced is sound, and we have not been convinced that there is any sufficient reason for disturbing it. An attempt is made to distinguish that case from the one at bar on the question of monopoly, but it is a distinction without a difference in the application of the principles involved and does not carry conviction to the mind of the court.

The last position taken by the learned counsel for appellant is that the covenant involved in the present case is in violation of the anti-trust law known as the Sherman act, and this defense is strongly and ably pressed upon us. The statute relied on was passed for the purpose of protecting trade and commerce among the several states or with foreign nations from unlawful restraints and monopolies, and has been the subject of such a wide range of judicial construction in so many cases in recent years that for the purposes of the present case nothing will be gained by elaborating the discussion. The writer of this opinion, speaking for himself, cannot understand why in any proper legal sense it should be considered an unlawful restraint of trade and commerce among the several states for the owner of a brick plant who sells its products and the products of other plants, in sections of two or three different states, to sell his plant, property and business to a proper purchaser for a large sum of money and at the same time and as

part of the contract between the parties make a covenant with the purchaser not to engage in the same kind of business in the same territory during a fixed period. The rule of common honesty should require the seller with his large profits in his pocket to keep his covenant, and it seems to me courts should not be astute to raise up broad questions of public policy in aid of one whose sole purpose is to avoid the obligations of his contract. The trend of decisions in recent cases is in this direction, and it is a wholesome tendency in the interest of fair and honest dealings among men. There should be and is a distinction between a consolidation of properties by purchase for legitimate business reasons in order to increase production and reduce cost, and a combination of owners and properties under one management which in many instances stifles competition and arbitrarily increases prices. As we read the cases construing the anti-trust statute the rule established seems to be that it has no application where the contract sought to be declared illegal concerns a legitimate business transaction and the unlawful restraint complained of is only incidental or collateral. In the present case the contract concerns a legitimate business transaction, and nothing on the face of it imposes any restraints upon trade and commerce among the states unless the covenant of appellant not to engage in buying or selling in the states named should be so construed. This at most is only incidental to the general purpose of the contract and should not, in the opinion of this court, be permitted to defeat the rights of the contracting parties. The presumption is that contracts are legal, not illegal, and the burden is on him who sets up illegality as a defense on a suit to enforce a contract, to show how and why it is unlawful. The contract may in terms or by necessary implication be violative of a declared public policy of the law or of a positive statutory requirement, or the established facts may show that such results follow its enforcement. In the case at bar the covenant sued on does not necessarily impose any restraints on interstate commerce because the product of each plant may be sold in the state of its domicile, and the established facts are not sufficient to show an unlawful interference with commerce among the states. As was

said by Mr. Justice HOLMES in Cincinnati, etc., Packet Company v. Bay, 200 U. S. 179, "A contract is not assumed to contemplate unlawful results unless a fair construction requires it upon established facts." This case holds in substance that a covenant made by the seller upon sufficient consideration not to engage in the business sold for a limited period within reasonable territorial limits as a part of the contract of sale and not as a device to control commerce does not fall within the operation of the anti-trust act of July 2, 1890. This doctrine is recognized in United States v. Trans-Missouri Freight Assn., 166 U. S. 290; United States v. Joint-Traffic Assn., 171 U. S. 505; Robinson v. Suburban Brick Co., 127 Fed. Repr. 804; Metcalf v. American School Furniture Co., 122 Fed. Repr. 115. It has been frequently held by the federal courts that the anti-trust statute was not intended to affect contracts which have a remote and indirect bearing upon commerce between the states: Field v. Barber Asphalt Paving Co., 192 U. S. 618; Hopkins v. United States, 171 U. S. 578; Addyston Pipe & Steel Company v. United States, 175 U. S. 211. The case at bar is within the spirit of the rule of this class of cases. The enforcement of the covenant against the covenantor, if in any proper legal sense it can be said to place a restraint upon interstate commerce at all, can only affect trade and commerce among the states in a remote, indirect and incidental manner. After careful consideration we have concluded that there is no rule of public policy, or of law, and no statutory restraint, the effect of which will be to deny appellee company the benefit of the covenant in question, and that the learned court below committed no error in entering a decree enjoining appellant from doing those things which he had agreed not to do. Assignments of error overruled and decree affirmed at the cost of appellant.