## City Ice Co. *v.* Easton Merchants Ice Co., Appellant.

*Contracts—Illegal contracts—Burden of proof—Monopoly—Consolidation of business—Public policy—Corporations—Specific performance—Fraud—Equity—Findings of fact—Appeal—Review.*

1. The courts will refuse to enforce a contract founded in illegality.

2. Where a party to a contract asserts its illegality, the burden of proof is upon him to show how and why it is unlawful.

3. A court of equity will always look through the form to the substance, and will refuse to enforce a contract if it is in fact monopolistic, no matter how innocent the transaction may seem.

4. Findings by the court below that a transaction is not fraudulent will not be reviewed by the Supreme Court, if there is evidence to support it.

5. A consolidation of rival businesses is not necessarily illegal.

6. A transaction will not be held illegal, simply because a monopoly incidentally and collaterally results from a legitimate business transaction.

7. Public policy does not require a corporation, about to retire from business, to abstain from selling its assets to a competitor.

*Equity—Remedy at law—Answer—Demurrer—Waiver — Jurisdiction—Specific performance—Act of June 7, 1907, P. L. 440.*

8. Objection to a bill in equity that there is a full, complete and adequate remedy at law, will be deemed waived, unless this question is raised by an answer or demurrer explicitly so stating, as required by Act of June 7, 1907, P. L. 440.

9. Specific performance of a contract will be granted when it is clearly the only adequate remedy for a breach thereof.

Argued May 4, 1920. Appeal, No. 32, Jan. T., 1921, by defendant, from decree of C. P. Northampton Co., April T., 1919, No. 4, on bill in equity in case of City Ice Co. v. Easton Merchants Ice Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Bill in equity for specific performance. Before STEWART, P. J.

The opinion of the Supreme Court states the facts.

The court entered a decree awarding specific performance. Defendant appealed.

*Error assigned* was, inter alia, decree of court, quoting it.

*Edward J. Fox,* with him *James W. Fox,* for appellant, cited: Nestor v. Continental Brewing Co., 161 Pa. 473; Thompson Glass Co. v. Fayette Fuel Glass Co., 137 Pa. 317; Mundy v. Brooks, 204 Pa. 232; McKee v. Verner, 239 Pa. 69; Conemaugh Brewing Co. v. Ben-

nett, 60 Pa. Superior Ct. 543; Pittsburgh v. Goshorn, 230 Pa. 212.

*H. J. Steele,* with him *Geo. F. Coffin,* for appellee, cited: Smith's App., 113 Pa. 579; Standard Oil Co. v. U. S., 221 U. S. 60; Monongahela River Consolidated C. & C. Co. v. Jutte, 210 Pa. 288; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173; Harbison-Walker Refractories Co. v. Stanton, 227 Pa. 55; Strause v. Berger, 220 Pa. 367; McGowin v. Remington, 12 Pa. 56; Goodwin G. S. & M. Co.'s App., 117 Pa. 514; Northern Cent. R. R. v. Walworth, 193 Pa. 207; Vail v. Osborn, 174 Pa. 580; Willock v. Crescent Oil Co., 184 Pa. 245; Warner v. McMullin, 131 Pa. 370; Phila. Ball Club v. Lajoie, 202 Pa. 216; Franklin Tel. Co. v. Harrison, 145 U. S. 459; Leisenring v. Penna. Lighting Co., 59 Pa. Superior Ct. 208.

OPINION BY MR. JUSTICE SIMPSON, May 26, 1920:

In 1917, and prior thereto, there were two retail ice companies in the City of Easton, the City Retail Ice Company which sold natural ice obtained from streams and lakes, and the Pure Distilled Water Ice Company which sold only artificial ice. Defendant, also located in Easton, was and is an ice manufacturing company, originally formed for the purpose of producing ice for its stockholders; but, as this limited business was not profitable, certain of these stockholders organized the Pure Distilled Water Ice Company, to sell at retail any surplus ice which might be produced. Both said retail companies had been operating at a loss; so much so that the Pure Distilled Water Ice Company had determined to sell its horses, wagons and other assets and retire from business, and suggested to the officers of the City Retail Ice Company that it become the purchaser thereof. Negotiations were then entered into, resulting in an agreement by which each was to sell its assets to a new company, which should issue its stock

in payment thereof; the Pure Distilled Water Ice Company to obtain from defendant, and assign to the new company, an agreement for the sale of its surplus product for a period of five years. Of these negotiations defendant's officers and directors had knowledge, and knew of and agreed to make the proposed contract for the sale of its surplus ice, possibly for the reason, found by the court below, that it "is not now, and never has been equipped for such [retail] sale or delivery."

Plaintiff was then organized to purchase and did thus purchase and pay for the assets of the two retail companies at their appraised value; and an agreement between defendant and the Pure Distilled Water Ice Company for the sale and delivery of the former's product—except so much thereof as should be needed by its own stockholders—was executed on December 6, 1917, and later, with defendant's approval, assigned to plaintiff. The price of $2 per ton specified therein was fixed by defendant's board of directors after an investigation into the cost of manufacture during prior years.

For some fifteen months defendant complied with its contract, but during the latter part of the time urged plaintiff to increase the price per ton, and alleged the agreement was invalid because part of a scheme to create a monopoly. Plaintiff refused to make the increase and insisted upon compliance with the contract, whereupon defendant gave notice that after a given date no more ice would be furnished, and thereafter refused to deliver any more. The present bill was then filed setting forth the foregoing facts, and also that on the faith of defendant's agreement plaintiff had itself made contracts with a large number of consumers in Easton to deliver ice to them, that during the preceding winter natural ice could not be obtained, that thereafter it was unable to get either natural or artificial ice from any other source than defendant, and prayed specific performance of the contract of December 6, 1917. Defendant's answer admitted the facts,

but alleged it would lose money if it was compelled to fulfill its contract, that it had always been ready and willing to comply therewith if a larger price was paid to it, and that the agreement was part of a scheme for the purpose of eliminating competition and creating an unlawful monopoly. The court below found the facts averred by plaintiff, entered a final decree for specific performance and therefrom this appeal is taken by defendant.

To say the least, defendant's attitude is an ambiguous one, and does not commend itself to a court of equity. It alleges its contract is part of a monopolistic scheme to wrongfully increase the price of this necessity of modern life, yet is willing to aid in the continuance of the monopoly, if it receives a part of the alleged wrongful exactions; with the probable result, if defendant's estimate of plaintiff is correct, that ultimately the price of ice to the public would be increased by reason of this additional expense, and with the certain result, as pointed out by the court below, that if "allowed to violate its contract, *it* would become the monopolist," for it alone would have ice to sell in the City of Easton. Despite this, however, if the contract is founded in illegality the courts will refuse to enforce it; but in considering this question "The presumption is that contracts are legal, and not illegal, and the burden is on him who sets up illegality as a defense on a suit to enforce a contract, to show how and why it is unlawful": Harbison-Walker Refractories Co. v. Stanton, 227 Pa. 55, 63.

Defendant admits that the contract for the purchase of its product and the sale to plaintiff of the assets of the two retail companies, are in themselves harmless; but avers that though "on the surface [the arrangement] looks like a series of perfectly legal transactions and absolutely unassailable," yet equity will "look at the substance, not at the outward form," and if it finds they were made "for the purpose of creating a monopoly," the contract will not be enforced. This is, of

course, true if the monopoly is an unlawful one; but equity is also not blind to the fact that defendant's admission is that the acts of the parties were not illegal, unless their "purpose" was to create an unlawful monopoly, which, being a question of fact, is answered by the finding of the court below that "there is no evidence of any fraudulent purpose in the making of the contract in suit"; a conclusion sustainable on the evidence produced at the trial, and hence not to be reversed by us: Byers v. Byers, 208 Pa. 23; Duncan v. Duncan (No. 2), 265 Pa. 471. Defendant's error is in assuming that the facts above stated are conclusive evidence of a wrongful intent to create a monopoly, whereas they may all be compatible with an innocent "purpose." As is said in Harbison-Walker Refractories Co. v. Stanton, supra, "There should be and is a distinction between a consolidation of properties by purchase for legitimate business reasons in order to increase production and reduce cost, and a combination of owners and properties under one management which in many instances stifles competition and arbitrarily increases prices. As we read the cases construing the anti-trust statute the rule established seems to be that it has no application where the contract sought to be declared illegal concerns a legitimate business transaction and the unlawful restraint complained of is only incidental or collateral."

In the present instance there would have been ultimately but one retail ice company in Easton (the City Retail Ice Company), if some such arrangement as this had not been made; for, as already stated, defendant was not equipped to sell ice at retail, and the Pure Distilled Water Ice Company had decided to sell its assets and quit the business. This latter would have resulted in its stockholders losing substantially all their investment, and nobody being benefited thereby. Public policy does not require so useless a sacrifice. On the contrary, as said by the Supreme Court of the United States in United States v. United States Steel Corporation et

al., 251 U. S. 417: "Such being the emergency, it seems like an extreme accusation to say that the corporation which relieved it, and, perhaps, rescued the company and the communities dependent upon it from disaster, was urged by unworthy motives. Did illegality attach afterwards, and how? And what was the corporation to do with the property? Let it decay in desuetude, or develop its capabilities and resources? In the development, of course, there would be a profit to the corporation, but there would be profit as well to the world. For this reason......it would seem a distempered view of purchase and result to regard them as violations of the law."

Defendant's contention that the bill should have been dismissed because plaintiff has a full, complete and adequate remedy at law, was not raised "by demurrer or answer explicitly so stating," and hence it is not considered: Act of June 7, 1907, P. L. 440. Nor are we impressed with its suggestion that the decree should have gone no further than to enjoin it from selling to any one else than plaintiff. At the time the decree was entered, manifestly specific performance was the only adequate remedy, and the needs of the consumers of Easton, as well as the rights of plaintiff (defendant's wrongful conduct having been found), then imperatively called for the measure of relief given by it.

The decree of the court below is affirmed and the appeal is dismissed at the costs of appellant.