## General Electric Company v. N. K. Ovalle, Inc.

*Nauman, Smith & Hurlock* and *Guckes, Shrader, Burtt & Thornton*, for plaintiff.

*Hause, Evans, Storey & Lick*, for defendant.

HARGEST, P. J., July 11, 1934.—The plaintiff, a New York corporation, brings this suit to recover $178,337.12 upon an open book account from April 4, 1933, to December 12, 1933, based upon a contract attached to the plaintiff's statement, dated May 1, 1930. This contract, called "Distributor-Dealer Territorial

Contract", appointed the defendant distributor for the plaintiff's electric refrigerators for territory which was enlarged by an agreement dated March 15, 1932, so as to include 39 counties of Pennsylvania, in 36 of which no territory was excluded, but in Cambria and Potter counties certain townships and boroughs were excluded, and in Northampton County only certain boroughs were included. The contract provided, among other things, that the plaintiff would sell to the distributor electric refrigerators "at 40 percent discount from its current list prices" and that the "distributor" should pay to the manufacturer "in cash or by accepting and paying sight draft attached to bill of lading, unless otherwise specifically arranged, the full list price at the time of purchase from manufacturer, less a discount of 40 percent or such other discount or discounts as may be hereafter announced by manufacturer." The contract also provided that if the sight drafts were not honored the plaintiff, the manufacturer, would have the right "at its option to withhold making further shipments or deliveries to distributor until such time as all indebtedness to the manufacturer shall have been fully paid. The title to all products, until actually paid for by distributor shall be and remain in manufacturer."

The defendant filed an affidavit of defense raising two questions of law: That the contract is void because it shows on its face (1) that it was intended to have, and did have, the effect of directly restraining and monopolizing interstate trade and commerce in electric refrigerators, in violation of section 1 of the Sherman Anti-Trust Act of July 2, 1890, 26 Stat. at L. 209, 15 U. S. C. §1, and therefore said contract is void; (2) that the contract had the effect of lessening competition and tended to create a monopoly in interstate commerce, of fixing prices for resale in violation of section 3 of the Clayton Act of October 15, 1914, 38 Stat. at L. 730, 15 U. S. C. §14.

The Sherman Anti-Trust Act above referred to provides, in part:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

The Clayton Act heretofore referred to provides, in part:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery . . . for use, consumption or resale within the United States . . . or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery . . . of a competitior or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

The question before us is whether this contract violates either of these acts of Congress.

There is no doubt that a State court may so declare: Cincinnati, etc., Packet Co. v. Bay, 200 U. S. 179 (1906); D. R. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U. S. 165.

We start with the proposition that "the presumption is that contracts are legal, not illegal, and the burden is on him who sets up illegality as a defense on a suit to enforce a contract, to show how and why it is unlawful": Harbison-Walker Refractories Co. v. Stanton, 227 Pa. 55, 63.

In Cincinnati, etc., Packet Co. v. Bay, 200 U. S. 179, 184, it is said:

"A contract is not to be assumed to contemplate unlawful results unless a fair construction requires it upon the established facts."

See also United Security Life Insurance, etc., Co. v. Brown (No. 3), 270 Pa. 273.

In Harbison-Walker Refractories Co. v. Stanton, supra, it is also said (p. 63) :

"In the present case the contract concerns a legitimate business transaction, and nothing on the face of it imposes any restraints upon trade and commerce among the states unless the covenant of appellant not to engage in buying or selling in the states named should be so construed. This at most is only incidental to the general purpose of the contract and should not, in the opinion of this court, be permitted to defeat the rights of the contracting parties."

In Holland et al. v. Brown et al., 304 Pa. 545, an agreement was attacked as void because in restraint of trade which provided that one of the parties should not conduct a dairy business within 10 miles of the city involved, and the court held, upon the authority of Sklaroff et al. v. Sklaroff et al., 263 Pa. 421, "that an agreement of this character, 'being limited in space, though unlimited in time, is prima facie good' ".

The contract involved in the instant case is limited in space and is confined to certain Pennsylvania territory and, starting with the presumption that the contract is good, we must find within the four corners of the contract itself that it will necessarily have the effect of stifling or restricting interstate commerce. It is difficult for us to find any such thing from this contract. The defendant is appointed a distributor, but under the contract he was required to purchase the refrigerators for distribution in the territory allotted to him at 40 percent discount from the current list price. He was required to pay freight and pay taxes or license fees imposed on account of the business, and if he did not honor the sight drafts the manufacturer had the right to withhold further shipment until such drafts were paid. The fact that this contract imposes a condition that the title is to remain in the manufacturer until the products are paid for by the distributor does not destroy the contract as a contract of conditional sale.

As we have already indicated, the test of the violation of the Sherman Anti-Trust Act is whether the necessary effect of the contract is to stifle or directly and substantially restrict interstate commerce. If it promotes, or if it only incidentally or indirectly restricts competition, while its main purpose and chief effect are to promote the business, it is not a violation of the act: United States v. Patten, 226 U. S. 525. In Board of Trade of the City of Chicago et al. v. the United States, 246 U. S. 231, it is held:

"Every agreement concerning or regulating trade restrains; and the true test of legality is whether the restraint is such as merely regulates, and perhaps thereby promotes, competition, or whether it is such as may suppress or even destroy competition.

"To determine this question, the court must ordinarily consider the facts peculiar to the business, its condition before and after the restraint was imposed, the nature of the restraint and its effect, actual or probable."

In the instant case, we would have to use our imagination to find, from an inspection of the plaintiff's statement, any necessary effect of stifling or restricting commerce. The purpose of this contract is to sell refrigerators. The defendant was appointed distributor in the territory allotted to him for that purpose, and therefore the chief effect of the contract is to promote business and increase the trade of the makers.

The second question is whether it violates the law because its effect is to fix the price at which the refrigerators are sold. There is not a word in this contract which says anything about the fixing of prices. In Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U. S. 373, it is held:

"A system of contracts between manufacturers and wholesale and retail merchants by which the manufacturers attempt to control not merely the prices at which its agents may sell its products, but the prices for all sales by all dealers at wholesale or retail whether purchasers or subpurchasers, eliminating all competition and fixing the amount which the consumer shall pay, amounts to restraint of trade and is invalid both at common law, and, so far as it affects interstate commerce, under the Sherman Anti-Trust Act".

In United States v. General Electric Co. et al., 272 U. S. 476, there was a system of contracts between the company and dealers, who were appointed as agents to sell on commission at prices fixed by the company and to account to the company for the amount less commissions on all sales for cash or on credits, and the stock entrusted to dealers was to remain the property of the company until sold and to be accounted for by the dealers. The question was whether these dealers were genuine agents or purchasers in disguise, and it was held that they were agents and "that the plan was not a device to fix prices after sale and to restrain trade and exercise monopoly".

In this case it is also held: "As long as a patentee makes no effort to fasten upon ownership of the articles he sells control of the prices at which his purchaser shall sell, it makes no difference how widespread his monopoly."

In Board of Trade of the City of Chicago v. United States, 246 U. S. 231, it is held: "A rule or agreement by which men occupying strong positions in a branch of trade fix prices at which they will buy or sell during an important part of the business day is not necessarily an illegal restraint of trade under the Anti-Trust Law."

The defendant relies chiefly upon the case of Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U. S. 227. In the Voight case the opinion of Mr. Justice Harlan (pp. 261, 262), demonstrates that the facts are altogether different from the instant case. The learned justice said:

"The present suit is not based upon an implied contract of the defendant company to pay a reasonable price for goods that it purchased, but upon agreements, to which both the plaintiff and the defendant were parties, and *pursuant to which* the accounts sued on were made out, and which had for their object, and which it is admitted had directly the effect, to accomplish the illegal ends for which the Continental Wall Paper Company was organized. . . . The question here is whether the plaintiff company can have judgment upon an account which, it is admitted by demurrer, was made up, within the knowledge of both seller and buyer, with direct reference to and in execution of certain agreements under which an illegal combination, represented by the seller, was organized. Stated shortly, the present case is this: The plaintiff comes into court admitting that it is an illegal combination whose operations restrain and monopolize commerce and trade among the States and asks a judgment that will give effect, as far as it goes, to agreements that constituted that combination, and by means of which the combination proposes to accomplish forbidden ends. We hold that such a judgment cannot be granted".

There is no similarity between the instant case and the one just referred to. There is no admission of illegality in the instant case. There is no necessary inference of restraint of trade or any attempt to fix the resale prices of the goods sold by it to the distributor.

Now, July 11, 1934, the affidavit of defense raising questions of law is hereby overruled, and the defendant is hereby required to file an affidavit of defense to the merits within 15 days from this date.

From Homer L. Kreider, Harrisburg, Pa.