## Hobensack et ux. v. McLean et al.

*James C. Bowen*, for plaintiffs.

*John Leslie Kilcoyne* and *Achey & Power*, for defendants.

SATTERTHWAITE, J., August 21, 1953.—Plaintiffs, by this proceeding in equity, seek legal redress for an alleged violation of a noncompetition covenant entered into by defendant, James F. McLean, in connection with the latter's sale to plaintiffs' predecessors of a carbonated beverage distributing business.

## I. Pleadings

The pleadings in this case, so far as presently material, consist of a bill in equity and answers thereto by the respective defendants. The bill alleges that on August 20, 1945, defendant, James F. McLean, was the owner of a certain soft drink distribution business; that on that date he sold the business to one Henry H. Fisher and others, including in the agreement of sale a covenant whereby he, McLean, agreed with the purchasers and their assigns not to reëngage or in any manner become interested in a business like or similar to the one sold, for a period of 10 years, within the area of Bucks County; that on September 7, 1948, Henry H. Fisher and the other owners sold the business to plaintiffs; that during October 1949 defendant,

James F. McLean, entered the employ of defendant Metropolitan Bottling Co., Inc. (whose correct corporate name was stipulated during the trial to be Pepsi-Cola Metropolitan Bottling Co., Inc.) to establish, supervise and maintain operations for the distribution of the bottled soft drink known as Pepsi-Cola in Bucks County, Pa.; that defendant Pepsi-Cola Metropolitan Bottling Co., Inc., had actual or constructive knowledge of the restrictive covenant which defendant McLean had entered into with the Fishers and that the corporation had induced and purposely caused McLean to breach the same by so employing him; that said employment still continues; that by reason of the conduct of both defendants, plaintiffs have suffered an annual loss of profits in their business and also a depreciation in the capital value of the business, the principal source of revenue thereof having been from the distribution of the product, Pepsi-Cola. The bill prayed that defendants be restrained from distributing Pepsi-Cola in Bucks County; that defendants be required to account to plaintiffs for damages and pay such amounts to plaintiffs as are determined to be due and owing by reason of such accounting; that defendants pay to plaintiffs the amount of the depreciation in capital value of their business, and that such other and further relief be afforded them as may be justified in the premises.

The answers filed by the respective defendants largely admit or disclaim knowledge of many of the facts averred in the bill. From the bill and answers, the factual issues involved may be summarized as follows:

1. Was there a breach of the restrictive covenant by the employment of defendant McLean by defendant bottling company?

2. If there was such breach, was there any responsibility or liability upon defendant Pepsi-Cola Metro-

politan Bottling Co., Inc., by reason thereof; did the bottling company have knowledge of the restrictive covenant and induce or otherwise cause or bring about the breach thereof by defendant McLean?

3. If there has been a breach of the restrictive covenant by defendant McLean, was such breach the legal and efficient cause of the damages claimed by plaintiffs?

At the trial on the issues raised, plaintiffs conceded that they were no longer requesting injunctive relief and the case proceeded on the theory that the court, having taken jurisdiction in equity, should proceed to assess the damages allegedly caused by the conduct of defendants. At the argument before the chancellor, it was conceded on behalf of plaintiffs that their proofs were not such as to justify any relief against defendant Pepsi-Cola Metropolitan Bottling Co., Inc. Plaintiffs did insist, however, that they had made out a case entitling them to damages against James F. McLean. No objection has been made to the manner or form of the proceedings, preliminary objections to the original bill on behalf of defendant, James F. McLean, having been withdrawn prior to argument thereof.

From the pleadings and the trial before the undersigned as chancellor, there are found the following:

## II. Findings of Fact

1. On August 20, 1945, and prior thereto since 1931, defendant James F. McLean was and had been the owner of a certain carbonated beverage distribution business, carried on under the fictitious name of East Penn Beverage Company at Somerton, Pa.

2. On August 20, 1945, defendant James F. McLean sold the business to Henry H. Fisher, Harold T. Fisher and Henry W. Fisher, the written agreement therefor containing a covenant on the part of James F. McLean as seller as follows:

"And the said seller hereby covenants and agrees to and with the buyer, his heirs, executors and administrators and assigns that he, the seller, shall not and will not re-establish, re-engage, re-open or in any manner become interested directly or indirectly in business like or similar to the business hereby sold, within the area formed by . . . Bucks Co. . . . for a period of ten years from date hereof."

3. On September 7, 1948, Henry H. Fisher, Harold T. Fisher and Henry W. Fisher sold the carbonated beverage business, including the name, East Penn Beverage Company, to plaintiffs Carl H. Hobensack and Marie C. Hobensack, who are still the owners thereof.

4. By written agreement dated March 5, 1949, plaintiffs Carl H. Hobensack and Marie C. Hobensack agreed with defendant James F. McLean to waive or release the restrictive covenants contained in the aforesaid agreement mentioned in finding no. 2, supra, for the purpose of permitting James F. McLean to establish a 7-Up distributorship in Bucks County, the agreement further expressly stating as follows:

"The said James McLean does hereby agree with and to the said Hobensacks that, with the exception as above noted, the above restrictive clause shall be and is binding upon himself, his heirs and assigns."

5. Defendant Pepsi-Cola Metropolitan Bottling Co., Inc., is and has been at all times material to the present case the bottler or manufacturer of a carbonated beverage known as Pepsi-Cola. This defendant, prior to October 31, 1949, manufactured and supplied Pepsi-Cola to the East Penn Beverage Company, which independently distributed the same, as one of the products it handled, to various retailers in Bucks County.

6. There existed no written or oral contract between defendant, Pepsi-Cola Metropolitan Bottling Co., Inc.,

and plaintiffs, vesting in plaintiffs any right to continue the distribution of Pepsi-Cola to any extent, plaintiffs purchasing Pepsi-Cola from the corporate defendant the same as any other distributor in the area might have prior to October 31, 1949.

7. On October 24, 1949, defendant James F. McLean became the employee of defendant Pepsi-Cola Metropolitan Bottling Co., Inc., as district manager for the distribution of the product Pepsi-Cola in Bucks County, Montgomery County and northern Philadelphia.

8. By letter dated October 27, 1949, defendant Pepsi-Cola Metropolitan Bottling Co., Inc., notified plaintiffs that as of October 31, 1949, defendant thereby canceled the distributor arrangements under which plaintiffs and other independent distributors had theretofore distributed the product Pepsi-Cola in Bucks County and that the corporate defendant thereafter would distribute Pepsi-Cola with its own personnel and equipment and not through independent distributors. Thereafter, plaintiffs no longer were permitted by corporate defendant to distribute the product Pepsi-Cola, and their business therein totally ceased.

9. From as early as 1941, the settled policy of the corporate authorities of defendant Pepsi-Cola Metropolitan Bottling Co., Inc., was eventually to assume and carry on all distribution within its own organization, and not through independent distributors, for the purpose of more efficient and economical operation of the business in which it was engaged. This policy had progressively been put into effect by the revocation of the privileges of independent distributors to purchase the product Pepsi-Cola and by the bottling and distribution of said product by defendant Pepsi-Cola Metropolitan Bottling Co., Inc., within its own organization, in all of the City of Philadelphia, and in Gloucester and Camden Counties, New Jersey, prior

to the time that plaintiffs purchased the carbonated beverage distributing business known as East Penn Beverage Company, and in Bucks and Montgomery Counties, Pennsylvania, and Burlington County, N. J., subsequent thereto.

10. Prior to the time that plaintiffs purchased the business, they were informed by a representative of defendant Pepsi-Cola Metropolitan Bottling Co., Inc., of the policy of the company to distribute its product directly and not through independent distributors.

11. On October 27, 1949, the date of the aforesaid letter to plaintiffs from defendant Pepsi-Cola Metropolitan Bottling Co., Inc., the corporate authorities of defendant also notified at least six other independent distributors at undisclosed places of business that their privilege to distribute Pepsi-Cola was thereafter discontinued.

12. Defendant Pepsi-Cola Metropolitan Bottling Co., Inc., had no knowledge, actual or constructive, of the restrictive covenant contained in the agreement of sale between defendant James F. McLean and Henry H. Fisher et al. mentioned in finding no. 2 supra, either at the time the corporation employed defendant James F. McLean or at the time that notice was given to plaintiffs of the cancellation of plaintiffs' privileges to distribute the product Pepsi-Cola. Defendant Pepsi-Cola Metropolitan Bottling Co., Inc., did not knowingly induce defendant James F. McLean to violate the terms of the restrictive covenant.

13. The duties of defendant James F. McLean as district manager for defendant Pepsi-Cola Metropolitan Bottling Co., Inc., for the territory including Bucks, Montgomery and part of Philadelphia Counties, included the general supervision of route men or truck drivers delivering the product Pepsi-Cola by corporate defendant directly to the retail outlets therein. As district manager, he employed, trained and

discharged employes of defendant Pepsi-Cola Metropolitan Bottling Co., Inc., under him, held sales meetings, promoted the business in general, looked for advertising locations, prepared route books listing the names of retail outlets to be contacted by the drivers, and, on occasion, went out into the territory himself directly to solicit new outlets for the product in the area under his supervision, including Bucks County.

14. A few months after his original employment, defendant, James F. McLean, was promoted to the position of warehouse manager for defendant Pepsi-Cola Metropolitan Bottling Co., Inc., his duties being to supervise and manage route men, cashiers, packers, and loaders and general supervision of a warehouse distribution point of the company located in Philadelphia and serving, inter alia, territory including Bucks County.

15. Upon the closing of the warehouse of defendant Pepsi-Cola Metropolitan Bottling Co., Inc., in the year 1951, defendant James F. McLean was made supervising manager over its territories including Burlington and Gloucester Counties, N. J., and Montgomery County, Pa. Since that time he has no longer acted in a supervisory capacity over territories including Bucks County.

16. For the years 1946 through 1949, inclusive, during the time that the carbonated beverage distribution business was carried on under the name of East Penn Beverage Company by Messrs. Fisher and by plaintiffs, the average annual number of cases of bottled beverages of all kinds purchased for resale in the distribution business was 73,996 cases, of which an average annual number of 40,232 cases, or 55 percent, was the product Pepsi-Cola produced and bottled by defendant Pepsi-Cola Metropolitan Bottling Co., Inc. During the years 1950 and 1951, there were no cases of Pepsi-Cola purchased by the business and the

average annual number of cases of beverages of other manufacture purchased was 28,828. The gross profits, that is the difference between the costs of goods sold and total cash receipts, for these years, were as follows: 1946 — $21,191.79; 1947 — $23,951.83; 1948 — $18,-000.44; 1949—$15,561.72; 1950—$7,558.72; 1951—$8,014.11. There was no competent evidence of net profits for the years 1948, 1949, 1950 and 1951, no expenses of the business being given in evidence.

17. There was a substantial decrease in the capital value of plaintiffs' carbonated beverage distribution business carried on under the name of East Penn Beverage Company subsequent to October 31, 1949, upon the loss of the privilege of distributing the product Pepsi-Cola; there is no sufficient, competent evidence as to the dollar amount of such depreciation.

18. There was no sufficient evidence that the decreased gross profits for the years 1950 and 1951 mentioned in finding no. 16, supra, and the depreciation in capital value of the business, mentioned in finding no. 17, supra, or either of them, were caused by the fact of the employment of defendant James F. McLean by defendant Pepsi-Cola Metropolitan Bottling Co., Inc., or by his activities in the course of such employment.

### III. Discussion

The chancellor is convinced that the restrictive covenant in suit is valid and enforcible and that defendant James F. McLean has breached his contractual undertaking in this respect by engaging in the duties of his employment for Pepsi-Cola Metropolitan Bottling Co., Inc., down to 1951, the time he became supervising manager over other territories. The difficulty in the case, however, arises out of the question whether or not plaintiffs have sufficiently borne the burden of proving that the damages they claim were the proximate result of McLean's breach of his agreement.

Where the seller of an established business undertakes, as a part of the consideration for such sale, to restrict his future activities in competition with the business so sold, such restriction is legally valid if limited either in time or space and if not unreasonable under all the circumstances. Even if such restrictive covenant be limited merely in point of space and unlimited in point of time, it is prima facie good: Sklaroff et al. v. Sklaroff et al., 263 Pa. 421; Holland et al. v. Brown et al., 304 Pa. 545. The burden of showing that the agreement is unreasonable and therefore illegal is upon the party alleging such position: Harbison-Walker Refractories Company v. Stanton, 227 Pa. 55; Holland v. Brown, supra. The modern leading case on the subject is Harris Calorific Company v. Marra et al., 345 Pa. 464, wherein most of the prior authorities are reviewed and discussed. The following appears at page 469 of the opinion in that case:

"It is now the rule in this jurisdiction as well as most others that where a contract is limited as to time or space it is not ipso facto against public policy but it is necessary to make further inquiry and determine whether the restriction is reasonable: Monongahela v. Jutte, supra (210 Pa. 288) ; Henschke v. Moore, 257 Pa. 196, 201, 101 A. 308.

"Restatement, Contracts, §515 states five particulars in which a restraint of trade is generally unreasonable. It is unreasonable 'if it (a) is greater than is required for the protection of the person for whose benefit the restraint is imposed, or (b) imposes undue hardship upon the person restricted, or (c) tends to create, or has for its purpose to create, a monopoly, or to control prices or to limit production artificially, or (d) unreasonably restricts the alienation or use of anything that is a subject of property, or (e) is based on a promise to refrain from competition and is not ancillary either to a contract for the transfer of good-

will or other subject of property or to an existing employment or contract of employment'."

The chancellor is of the opinion that the undertaking of James F. McLean when he sold the business to Messrs. Fisher was not unreasonable when viewed in light of the considerations mentioned. As pointed out in Hanlon v. Morrissey, 58 D. & C. 133, 145, "A party may not derogate from his grant. Good faith requires of a party who has sold the good-will of his business, that he should do nothing which tends to deprive the purchaser of its benefits and advantages: *Hall's Appeal*, 60 Pa. 458. He cannot injure or destroy the good-will with which he has agreed that he will not interfere."

Furthermore, defendant McLean has breached the restrictive covenant not to compete. The nature of the duties he performed in the course of his employment by defendant Pepsi-Cola Metropolitan Bottling Co., Inc., a competitor of plaintiffs after October 1, 1949, certainly amounted to an indirect engagement in the carbonated beverage distribution business on his part. Since his activities extended into Bucks County within 10 years after he had sold the East Penn Beverage Company and entered into the covenant in question, he has violated the terms thereof. It is clear that, although nominally working for someone else, he had actually reëntered the distribution business by selling his services on a salary rather than a profit basis; all the duties of his employment related to marketing the product of his employer in competition with independent distributors, including plaintiffs. He undoubtedly in the course of his employment availed of his past experience, both in the field and in a supervisory capacity, with all phases of the business. For his salary, he furnished the corporate defendant with this background of knowledge and ability, notwithstanding that he had, in effect, previously agreed with

the purchasers of his own business not to derogate from the value of the enterprise so sold by using his own personality and "know-how" in competition therewith.

It is also clear that plaintiffs have sustained a severe and abrupt decline in the volume of business carried on by them, which would seem necessarily to be reflected in a sharp decline in the capital value thereof (although the chancellor is not impressed by the testimony of a so-called "expert" with respect to the dollar amount of such capital depreciation). Such a result is inevitable in any enterprise of this character when a product which had previously constituted about 55 percent of its stock-in-trade becomes no longer available to it. Since this happened to coincide with individual defendant's employment by the manufacturer of the product, plaintiffs understandably seek to place the blame therefor upon him. However, in the opinion of the chancellor, they have failed to show any more than such coincidence and hence must fail in their claim for damages, not only against the corporate defendant as they concede, but also against defendant McLean. Although they have shown a violation of his contractual undertakings, they have totally failed to show any causal connection between such breach and the loss they allege. They were the unfortunate losers in an economic gamble involving the continued privilege to distribute the product Pepsi-Cola, of the uncertainties of which they were aware prior to the time they purchased the business and with respect to which they were not alone in the carbonated beverage distribution industry in the area.

The chancellor is of the opinion that their loss, whatever it might have been, arose largely, if not entirely, from the application of a long-established policy of the Pepsi-Cola Metropolitan Bottling Co., Inc., the manufacturer of the product involved, with whom they

had no contractual standing whatsoever. So far as appears in this record, except for the time element, the decline in their business bore not the slightest relation to the employment of defendant James F. McLean. It was the unavailability of the product Pepsi-Cola which caused the financial loss of which they complain; they show no facts to justify a finding that defendant McLean's activities caused any identifiable harm to them. In other words, the chancellor believes that inasmuch as they would have lost the privilege to distribute Pepsi-Cola, whether or not McLean was employed by that corporation, and inasmuch as their definite proofs of their claim for damages went to the depreciation in the capital value of the business which, in turn, clearly resulted solely from the loss of the Pepsi-Cola business, they have failed to connect in the legal sense McLean's breach of contract with the damages claimed. To say that he is responsible for the full amount of such capital depreciation would be a travesty on justice under the circumstances here presented. Since plaintiffs have shown no other basis for calculating their damages resulting from his breach of contract, they may recover a nominal amount only. In actions of this type, punitive damages are not recoverable; nothing more than compensation for the loss sustained as a result of violation of the noncompetition agreement may legally be awarded: Westfall v. Mapes, 3 Grant Cases 198.

### IV. Conclusions of Law

1. Defendant James F. McLean on August 20, 1945, entered into a legally binding contract not to engage in the carbonated beverage distribution business in any manner, directly or indirectly, in Bucks County, Pennsylvania, for a period of 10 years.

2. Plaintiffs, as purchasers of the East Penn Beverage Company, became and are entitled to enforce such contract against defendant James F. McLean.

3. On and after October 24, 1949, defendant James F. McLean violated the aforesaid restrictive covenant in the course of his employment by defendant Pepsi-Cola Metropolitan Bottling Co., Inc.

4. Plaintiffs at no time had any vested or contractual right to distribute the product Pepsi-Cola in Bucks County, Pa.

5. Defendant Pepsi-Cola Metropolitan Bottling Co., Inc., is not liable in any manner to plaintiffs by reason of its employment of defendant James F. McLean or by reason of its revocation of the privilege of plaintiffs to distribute the product Pepsi-Cola.

6. Plaintiffs have not borne the burden of proving any causal connection between either their alleged but unproven loss of profits or their alleged loss in the capital value of their business and the activities of defendant James F. McLean constituting the breach of contract above mentioned.

7. Plaintiffs are entitled to nominal damages in the amount of $5 against defendant James F. McLean.

8. Requests for findings of fact numbered 12, 13 and 14 submitted by plaintiffs and filed herewith are hereby refused.

9. Requests for conclusions of law numbered 4 and 5 submitted by plaintiffs and filed herewith are hereby refused.

10. Defendant James F. McLean should pay the costs of these proceedings.

### Decree Nisi

And now, August 21, 1953, it is hereby ordered, adjudged and decreed nisi as follows:

1. That judgment be entered in favor of plaintiffs Carl H. Hobensack and Marie C. Hobensack and against defendant James F. McLean in the amount of $5.

2. That plaintiffs' bill of complaint be dismissed as to defendant Metropolitan Bottling Co., Inc., correctly

known as Pepsi-Cola Metropolitan Bottling Co., Inc.

3. That defendant James F. McLean pays the costs of these proceedings.

This decree shall be entered as a decree nisi, which will be entered by the prothonotary as a final decree unless exceptions are filed hereto within 20 days after notice of the filing of this adjudication.