433 Pa. 495 (1969)
Pennsylvania Public Utility Commission et al., Appellants,
v.
Allegheny County Port Authority.
Supreme Court of Pennsylvania.
Argued November 16, 1967.
Reargued January 22, 1969.
April 23, 1969.
*496 *497 Before BELL, C.J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.
Anthony L. Marino, Assistant Counsel, with him Joseph C. Bruno, Chief Counsel, for Pennsylvania Public Utility Commission, appellant.
James H. Booser, with him Harry H. Frank, and McNees, Wallace & Nurick, for intervenor, appellant.
Robert M. Brown, with him Henry W. Rhoads, Charles B. Zwally, and Burgwin, Ruffin, Perry, Pohl & Springer, and Rhoads, Sinon & Reader, for port authority, appellee.
OPINION BY MR. JUSTICE O'BRIEN, April 23, 1969:
88 Transit Lines, Inc., has applied to the Public Utility Commission for group and party bus transportation rights. The rights applied for contemplate the origination of service in Allegheny County to other points in Pennsylvania. The Port Authority of Allegheny County, when given notice of a hearing on 88 Transit Lines' application, invoked the provisions of § 1111 of the Public Utility Code, Act of May 28, 1937, *498 P.L. 1053, 66 P.S. § 1441, and filed a petition in equity, seeking to restrain the Commission from holding hearings or otherwise proceeding on 88 Transit Lines' application, prior to a determination of the Commission's jurisdiction of the application.[1]
The Court of Common Pleas of Dauphin County, in accordance with the Prayer of the petition, granted a preliminary injunction restraining the Commission, and the Commission appealed.[2] We granted leave to 88 Transit to intervene as an appellant. After the case was first argued, this Court granted reargument to consider, among other things, whether it was necessary to quash the appeal. On the issue of quashing, we conclude that the appeal is properly before us, that the procedures in § 1101 et seq. of the Public Utility Code by their very language apply only to appeals from *499 the Commission to the Superior Court and not to appeals from the Dauphin County Court to this Court. We turn now to the main issue in the case.
It has long been the rule in this Court that on an appeal from a decree, whether granting or denying a preliminary injunction, we will not inquire into the merits of the controversy, but will, instead, examine the record only to determine if there were any apparently reasonable grounds for the action of the court below. Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 207 A. 2d 768 (1965) and cases cited therein. Moreover, we will not "pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly not applicable." United Nat. Gas Co. v. Wagner, 417 Pa. 456, 208 A. 2d 843 (1965) and cases cited therein. See also: City L.O.H., Inc. v. Hotel, M. & C.E. Union, 413 Pa. 420, 197 A. 2d 614 (1964). With this standard of review in mind, we have examined the record and have determined that there were, in fact, apparently reasonable grounds for the action of the court below. Nor can we say that the court below has misconstrued or misapplied the law. In essence, the controversy involves the jurisdiction of the Commission to entertain the application of 88 Transit. Section 1111 of the Code provides: "No injunction shall issue modifying, suspending, staying, or annuling, any Order of the Commission, or of a Commissioner, except in a proceeding questioning the jurisdiction of the Commission, and then only after cause shown upon a hearing. The Court of Common Pleas of Dauphin County is hereby clothed with exclusive jurisdiction throughout the Commonwealth of all proceedings for such injunctions, . . .". The very matter which the Authority seeks to have determined is the jurisdiction of the Commission. The essential position *500 of the Authority is that § 13.1 of the Second Class County Port Authority Act of April 6, 1956, P.L. (1955) 1414, 55 P.S. § 563.1, has ousted the Commission's jurisdiction in applications such as that which forms the basis of the instant action. That Section provides: "Upon the recording of the plan of integrated operation, any law to the contrary notwithstanding, the Authority shall have exclusive jurisdiction with respect to all matters regarding a transportation system within the service area as set forth in the plan of operation. The Public Utility Commission shall have no authority to grant certificates of public convenience for a transportation system or otherwise regulate in any respect within the said area."
A reading of this Section indicates plainly that a very serious question of the Commission's power to entertain 88 Transit's application exists. We conclude that the court below had reasonable grounds for granting a preliminary injunction, and further, that this record presents neither palpable legal error nor that the law relied upon was clearly inapplicable. We are of the view that the order of the Commission, setting a hearing on the 88 Transit application, is such an order as is within the contemplation of § 1111 of the Public Utility Code.[3] Having so concluded and further having recognized the challenge to the Commission's jurisdiction posed by the above-quoted section of the Port Authority Act, we will not consider the merits of the controversy, but will, in the light of our traditional standard of review, affirm the decree granting the preliminary injunction.
Decree affirmed, costs to abide the event.
*501 DISSENTING OPINION BY MR. JUSTICE ROBERTS:
I am convinced that the court below relied upon a rule of law which is clearly not applicable and palpably wrong. By its affirmance, the majority reads the word "order" in the controlling statute to encompass any action of whatsoever nature taken by an administrative tribunal for here all that the Commission has done is list for hearing 88 Transit Lines' application.[1] If this action by the Commission is an "order" within the Act of 1937, then I submit that any administrative action, however ministerial, must be. Had the Commission labeled its action "notice of hearing," would the majority have held that its action constitutes an "order?" I would think not, yet that is all the Commission has done. The impact of the majority's position is thus clear  in any case where the jurisdiction of the Commission is challenged, the protesting party can bring to a screeching halt the entire administrative process by the simple expedient of filing an injunctive action in the Dauphin County Court of Common Pleas. Such a doctrine is contrary to the fundamental rules governing our review of administrative action, and ignores the clear teaching of our cases and those of the Superior Court, decisions which the majority fails to discuss.
The Commission contends that listing for hearing a carrier's application is not sufficient to constitute an *502 "order" the operation of which can be enjoined under § 1111 and that, therefore, the jurisdictional requirements of this section have not been satisfied.[2] I agree and thus would reverse the decree below.
Although § 1111 litigation has not been infrequent, neither our cases nor those of the Superior Court have yet attempted to articulate what Commission action is sufficient to constitute an order for the purposes of § 1111. However, with the possible exception of dictum contained in two cases,[3] the factual pattern presented by § 1111 litigation dictates the conclusion that the "order" contemplated by this section must in some manner act coercively against the party seeking injunctive relief. What is in essence involved in this controversy is the time at which the Authority can properly file an injunctive proceeding. If the Authority is denied the right to do so at this juncture, it would be faced with two choices, either participate in *503 the administrative process or decline to do so. If the Authority chooses to participate, and the Commission issues an order granting 88 Transit Lines the requested group and party transportation rights, the Authority could then seek injunctive relief from the operation of this order. The Authority's basic complaint is thus that it (if it chooses to participate in the hearings on the application) will expend funds for this litigation. In my view, administrative action which merely occasions litigation expenditures by the protesting party is not coercive action, but rather is part of the burden all must bear as part of the judicial process.
Two Superior Court cases, Blythe Township Municipal Authority v. Pennsylvania Public Utility Commission, 191 Pa. Superior Ct. 542, 159 A. 2d 256 (1960) and Sayre Land Co. v. Pennsylvania Public Utility Commission, 167 Pa. Superior Ct. 1, 74 A. 2d 713 (1950), are relied upon by all parties and are perhaps the leading cases in this area. Both support my view that Commission order or directive short of coercive action directed against the party requesting the injunction cannot form the basis of a § 1111 petition.
Sayre filed an application with the Commission for a certificate approving acquisition of certain water service properties. Petitions were then filed by Sayre requesting access to the books and records of the company which owned the properties to be acquired so that the purchase price could be computed. The company filed an answer to this petition asserting that the Commission lacked jurisdiction to grant the certificate approving acquisition; the Commission disagreed and ordered that the books and records be made available for inspection. The Superior Court held that this order could not be directly appealed to it[4] and further *504 opined that to test the Commission's jurisdiction the proper procedure was a petition for injunctive relief in Dauphin County Court. In Blythe, the Borough of Schuylkill Haven filed a tariff supplement with the Commission increasing the rates it charged Blythe for water Blythe purchased from Schuylkill Haven's reservoirs. Blythe opposed the tariff change, contending that the Commission lacked jurisdiction to entertain Schuylkill Haven's request. The Commission found that it had jurisdiction, allowed the tariff to become effective (the Commission had suspended the tariff pending disposition of the jurisdictional question) and proceeded to the merits of Schuylkill Haven's tariff supplement. Holding that this action by the Commission could not be directly appealed to it, the Superior Court again suggested that the proper procedure was a § 1111 petition.[5]
In both of these cases the Commission had acted coercively against the party seeking the injunction  books would have to be produced and a new tariff would have to be paid. The Commission had thus required more than additional litigation expenditures by the party seeking the injunction.[6]York Railways Co. v. Driscoll, 331 Pa. 193, 200 Atl. 864 (1938) can be subjected to a similar analysis. York filed a request with the Commission to extend the time of payment on an outstanding $5,000,000 bond issue. The Commission *505 granted an extension as to $3,300,000 of these bonds but refused to grant the requested relief for the remaining $1,700,000 of bonds. Asserting that the Commission lacked jurisdiction to refuse the request in part while granting the request in part, York successfully obtained an injunction. Obviously, the Commission's refusal to extend the time of payment on $1,700,000 of bonds operated to compel timely payment and, in any sense of the word, acted coercively against York.[7]
Giving content to the word "order" in § 1111 is merely one facet of a problem presented by judicial review of administrative action usually classified under the rubric of ripeness for review. Professor Davis, after an extensive canvass of ripeness cases, concludes that although courts have usually approached these problems on an ad hoc basis nevertheless certain principles do emerge. See Davis, Administrative Law Treatise, ch. 21, §§ 21.01-10 (1958). According to Professor Davis, "[a]n issue is normally ripe for judicial determination when interests of the plaintiff are in fact subjected to or imminently threatened with substantial injury." Id. at § 21.10, p. 200. This rule is a product of two primary considerations: the conservation of judicial resources and a desire to minimize judicial intrusions upon the administrative process.[8] *506 Both of these considerations indicate that administrative action which merely sets an application down for hearing should not be subjected to judicial review. Not only may the controversy be mooted if the requested administrative action is refused on the merits, but judicial intervention in preliminary administrative action designed merely to facilitate exploration of the merits of the application before the administrative agency would clearly constitute premature judicial intervention.
The result of the majority's decision is that a separate hearing must be held limited solely to the question of jurisdiction. Further, the initial determination of whether the P.U.C. has jurisdiction will be made not by that body itself as part of its regular procedure, but by the common pleas court, in an entirely different litigation. While I believe that at the least it would be preferable for the P.U.C. to make the initial determination as to its own jurisdiction, even if it was required to hold a special hearing limited only to determining that question, this too would engender a considerable waste of time and effort. Much worse, however, is the procedure which has been allowed by the majority, a procedure which has allowed the Port Authority to keep this case delayed in the judicial system for nearly two years merely to determine whether there may be a hearing. If a hearing is finally held to be permissible, only then can the P.U.C. begin to proceed with the merits.
As previously stressed, the Authority's complaint is that it will be required to expend its funds protesting 88 Transit Lines' application even though the Commission *507 has not required or directed the Authority to do anything. The contention that failure to relieve a party of the expense of participation in administrative proceedings is equivalent to a threat of substantial injury has often been rejected. The expense and annoyance of litigation has aptly been classified as a "part of the social burden of living under government." Bradley Lumber Co. v. National Labor Relations Board, 84 F. 2d 97, 100 (5th Cir. 1936). Perhaps Mr. Justice FRANKFURTER, rejecting a railroad's request for a preliminary injunction wherein the railroad alleged that the proceedings being conducted by the Railroad Adjustment Board were beyond its jurisdiction, has best disposed of this contention: "[A]mong the injuries asserted by Railroad, only the possibility that it is being put to needless expense incident to the pending Board proceeding will necessarily be involved if judicial relief is denied at this stage of the administrative process. Such expense is inadequate basis for intervention whether by mandamus or injunction." Whitehouse v. Illinois Central Railroad Co., 349 U.S. 366, 373-74, 75 S. Ct. 845, 850 (1955).
I thus believe that, absent any Commission action directed coercively against the § 1111 petitioner, i.e., action which subjects the petitioner to or threatens him with substantial injury, there has been no order issued by the Commission sufficient to meet the requirements of § 1111. Therefore, the action of the Commission (listing the application for hearing) presently under review, action which merely places the matter in the customary channel for administrative determination, is not an "order" for § 1111 purposes and I would reverse the grant below of a preliminary injunction.
I dissent.
NOTES
[1] Subsequent to the original argument of this appeal, the General Assembly enacted certain amendments to the Business Corporation Law, Act of July 20, 1968, P.L. , § 17 of that Act, 15 P.S. § 1322, grants certain powers of condemnation to public utility corporations. Subsection C of § 17 requires approval of the Public Utility Commission in certain public utility condemnations and prohibits an attack on the Commission's jurisdiction in the Commonwealth Court or any Court of Common Pleas, leaving questions of jurisdiction to the Commission itself and providing for an appeal, on a question of jurisdiction, to the Superior Court. The Act is applicable only to the limited condemnation situations there enumerated and has no relevancy to the instant proceedings.
[2] Appellee filed a petition to remit this appeal to the Superior Court, which petition we denied on September 15, 1967. The petition was based upon the second sentence of § 1111 which provides that an appeal from the action of the Dauphin County Court is to be taken to the Superior Court. However, the Act of August 14, 1963, P.L. 819, § 2, 17 P.S. § 191.4(4) (Supp. 1966) lists as one of the areas of Supreme Court direct appellate jurisdiction "actions and proceedings in equity." We therefore conclude that this matter is now in the proper court and that the mandate of § 1111 requiring appeals to be taken to the Superior Court has been impliedly repealed by the Act of 1963.
[3] Were it otherwise, the Commission could require the parties to endure the often long and burdensome ordeal of a Public Utility Commission hearing in situations where the Commission was entirely without jurisdiction.
[1] The record of the proceedings below contains orders of the Commission specifically sustaining its jurisdiction in eight other applications for enlarged group and party bus transportation rights. Although the Authority did contest the propriety of these orders before the Commission, no injunction was sought and I therefore do not believe that any of these orders involving other applicants are properly before this Court, for this appeal concerns only the grant of the injunction prohibiting further proceedings vis-a-vis 88 Transit Lines' application. With this conclusion the majority apparently agrees.
[2] A reading of § 1111 demonstrates that the absence of an enjoinable Commission order would vitiate the jurisdiction of the court below. Cf. Bliss Excavating Co. v. Luzerne County, 418 Pa. 446, 211 A. 2d 532 (1965); Seligsohn Appeal, 410 Pa. 270, 189 A. 2d 746 (1963); Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission, 396 Pa. 34, 152 A. 2d 422 (1959).
[3] Citizens Passenger Railway Co. v. Public Service Commission, 271 Pa. 39, 114 Atl. 642 (1921) and Reed v. Pennsylvania Public Utility Commission, 174 Pa. Superior Ct. 132, 100 A. 2d 399 (1953). Both of these cases involved whether an appeal could be taken directly from a Commission order to the Superior Court; holding that the appeal was interlocutory, each court intimated that any jurisdictional question could be presented to the Dauphin County Court via an injunction proceeding. In Citizens Passenger the Commission had directed that a complaint be answered and in Reed it refused to dismiss for jurisdictional reasons the application of a power company for approval to exercise the power of eminent domain. Since the Commission had not decided either case on the merits nor had it issued any order other than one which would occasion litigation expenditures involved in the administrative process on the part of the losing party, it had not acted coercively.
[4] See section 1101 of the Public Utility Code, Act of May 28, 1937, P.L. 1053, 66 P.S. § 1431.
[5] Blythe and the water company subsequently filed § 1111 actions. See Blythe Township Municipal Authority v. Pennsylvania Public Utility Commission, 199 Pa. Superior Ct. 334, 185 A. 2d 628 (1962); Sayre Land Co. v. Pennsylvania Public Utility Commission, 196 Pa. Superior Ct. 417, 175 A. 2d 307 (1961), aff'd on opinion of Superior Court, 409 Pa. 356, 185 A. 2d 325 (1962).
[6] Of course, we here assume that the party protesting the proposed Commission action will wish to litigate the merits after its jurisdictional objections are overruled. If it does not so choose, then no further expenditures will be necessary.
[7] Bell Telephone Co. v. Driscoll, 343 Pa. 109, 21 A. 2d 912 (1941) is typical of another line of cases permitting § 1111 to be employed. This case concerned an attempt to enjoin the Attorney General and the Commission from enforcing an allegedly unconstitutional criminal statute. The rationale of this decision  a person should not be forced to test an allegedly unconstitutional statute by subjecting himself to possible imprisonment  accords with the "threat of substantial injury" test discussed in text, infra.
[8] In the first Sayre appeal the Superior Court analogized § 1111 to Pa. R.C.P. 1017 which permits jurisdictional questions to be raised in limine in ordinary actions at law or in equity. This analogy, however, is not here apt for Rule 1017 is concerned with judicial review of an inferior court while § 1111 poses problems of the proper relationship between the executive and judicial branches of government.