385 A.2d 1354

**PERIPHERAL DYNAMICS, INC., Appellant,**

**v.**

**Joseph S. HOLDSWORTH and True Data, Inc.**

Superior Court of Pennsylvania.

Argued Dec. 10, 1976.

Decided April 13, 1978.

Andrew B. Cantor, Norristown, with him Alan B. Ruben-stein, Philadelphia, for appellant.

Abraham A. Hobson, III, King of Prussia, submitted a brief for appellee, Joseph S. Holdsworth.

Brian E. Appel, Philadelphia, for appellee, True Data, Inc.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The six Judges who heard this appeal being equally divided, the order is affirmed.

SPAETH, J., files an opinion in support of affirmance in which JACOBS, P. J., joins.

HOFFMAN, J., files a concurring opinion.

VAN der VOORT, J., files an opinion in support of reversal in which CERCONE and PRICE, JJ., join.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

HOFFMAN, Judge, concurring:

Appellant contends that the lower court erroneously refused to grant a preliminary injunction enforcing a restrictive employment covenant between appellant and its employee, appellee.[1] I disagree and, therefore, would affirm the lower court.

The following facts were adduced at a hearing before the Court of Common Pleas of Montgomery County pursuant to appellant's request for a preliminary injunction. Appellant, Peripheral Dynamics Inc. (P.D.I.), a corporation located in Montgomery County, is in the business of designing, manufacturing, and selling computer peripheral equipment, specifically card readers, throughout the world. Although hundreds of companies manufacture and deal in other types of computer peripheral devices, appellant P.D.I. is one of the four companies that manufacture peripheral card readers. From August, 1973, until November, 1975, appellee, Joseph H. Holdsworth, served as national or international sales

---

1. The two appellees in this case are Joseph S. Holdsworth, an employee of appellant Peripheral Data, Inc. and True Data, Inc., appellant's competitor for which Holdsworth went to work after resigning from employment with appellant.

manager. In that capacity, Holdsworth used his expertise in card readers, marketing, and engineering, and travelled throughout the world in an effort to sell P.D.I's card readers. Specifically, Holdsworth's job took him throughout the United States, as well as to Europe and Japan.

In May, 1974, Holdsworth submitted his resignation to P.D.I., effective June 13, 1974, in order to accept a similar position with one of P.D.I.'s competitors, Documation, Inc. However, prior to the effective date of his resignation, Holdsworth changed his mind and informed P.D.I. that he would continue as its employee. P.D.I. agreed to retain Holdsworth as an employee, provided that he sign an agreement in which he promised to refrain from working for P.D.I.'s competitors. Holdsworth agreed and in a letter to P.D.I., dated June 7, 1974, he stated that he was withdrawing his resignation and desired to continue his employment with P.D.I. The letter also contained the following provisions:

5. For a period ending one year after the end of my employment with PDI, for any reason whatsoever, I shall not either directly or indirectly, as proprietor, partner, stockholder, director, agent, principal, agent, employee, consultant or lender, become associated with Documation, Inc., True Data, Inc., Oki Bridge Data Products, Inc., Mohawk Data Sciences, Inc., or any other person, firm corporation or other entity which manufactures, sells or otherwise deals in computer peripheral card readers.

6. In furtherance of, and without in any way limiting the restriction in paragraph 5 above, for the period specified in paragraph 5, I shall not directly or indirectly,

(a) request any customers of PDI to curtail or cancel their business with PDI;

(b) solicit, canvas or accept, or authorize any person or entity to solicit, canvas or accept, from customers or potential customers of PDI, any business for myself or for the companies specified in paragraph 5 or for any other person, firm, corporation or other entity which manufactures, sells or otherwise deals in peripheral card readers.

As used in this paragraph, "potential customer" shall mean possible customers with which PDI has had some business contact.

After signing the letter, Holdsworth continued to work for P.D.I. until November, 1975, when he gave the company notice that he would be leaving. In November, 1975, Holdsworth went to work for True Data, a competitor of P.D.I., in a job involving the sale of True Data card readers.

On January 20, 1976, P.D.I. filed a complaint in equity, requesting a preliminary injunction to enjoin Holdsworth from continuing his employment with True Data and to comply otherwise with the terms of the agreement contained in the letter of June 7, 1974. On January 26, 1976, the Court of Common Pleas of Montgomery County issued a rule to show cause why a preliminary injunction should not be issued and set a hearing for February 10, 1976. However, on February 10, 1976, after a brief discussion with counsel in chambers, the court refused to hold a hearing and denied P.D.I.'s request for a preliminary injunction. P.D.I. appealed to our Court from this order. On April 10, 1976, pursuant to a stipulation among the parties, our Court vacated the lower court's order and remanded the case to the Court of Common Pleas of Montgomery County and directed a prompt hearing on P.D.I.'s request for a preliminary injunction.

The lower court held hearings on May 13, May 14, and June 9, 1976. At the close of appellant's case, appellees moved to dismiss appellant's request for a preliminary injunction, stating that the motion was in the nature of a demurrer. Appellees maintained that P.D.I. had not met its burden of establishing a restrictive covenant with a geographic limitation and of showing that the covenant, as written, was reasonably related to protecting P.D.I.'s interest. Moreover, appellees urged that the extensive enforcement P.D.I. sought would work a severe hardship on appellee Holdsworth. On June 10, 1976, the lower court granted appellees' motion and entered an order denying the preliminary injunction. This appeal followed.

Appellant contends that the lower court erred in refusing to grant a preliminary injunction to enforce the restrictive employment covenant because the court could have implied a reasonable geographic limitation despite the absence of an explicit geographic limitation. The Majority finds that although the restrictive covenant could have been given a reasonable geographic limitation, appellant did not seek such reasonably limited enforcement. Accordingly, the Majority affirms the lower court's denial of the preliminary injunction. I concur.

It is well established that the scope of appellate review of a decree either granting or denying a preliminary injunction is limited to an examination of the record only to determine whether there were any apparently reasonable grounds for the lower court's action. In determining the correctness of the lower court's action, the appellate court considers the facts of record before it on the date of the lower court's determination. *Bryant v. Sling Testing and Repair Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977); *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976); *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 207 A.2d 768 (1965); *Alabama Binder & Chemical Corp. v. Pennsylvania Industrial Chemical Corp.*, 410 Pa. 214, 189 A.2d 180 (1965); *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 123 A.2d 626 (1965). Thus, "It has long been the rule . . . that on an appeal from a decree, whether granting or denying a preliminary injunction, we will not inquire into the merits of the controversy, but will, instead, examine the record only to determine if there were any apparently reasonable grounds for the actions of the court below. Moreover, we will not 'pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied upon are palpably wrong or clearly not applicable. . . .' " *Pa. P. U. C. v. Allegheny Co. Port Authority*, 433 Pa. 495, 499, 252 A.2d 367, 369 (1969). *See also, Sidco*, supra; *Roberts v. Bd. of Directors of the School District of the City of Scranton*, 462 Pa. 464, 341 A.2d 475 (1975); *Albee Homes, Inc.*, supra; *Seligman and Latz of Pittsburgh v. Vernillo*, 382 Pa. 161, 114 A.2d 672 (1955).

There are four prerequisites which are essential for the issuance of a preliminary injunction: ". . . first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct . . . Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded." *Bryant,* supra, 471 Pa. at 7, 369 A.2d at 1167. *See also, Sidco,* supra; *Albee Homes, Inc.,* supra.

In the instant case, after three days of hearings during which it heard the testimony of both Holdsworth and P.D.I.'s corporate president, the lower court refused to grant a preliminary injunction. In its opinion, the court based its refusal to grant equitable relief on the grounds that the injunction sought was not reasonably designed to abate the activity sought to be restrained, working for P.D.I.'s competitor. The court correctly reasoned that in order for a restrictive employment covenant to be enforceable, it must be reasonable in time, reasonable in geographic extent, and reasonably necessary to protect the employer without imposing an undue hardship on the employee. These requirements are the well-established criteria that our courts have used in evaluating the enforceability of restrictive employment covenants. *Bryant,* supra; *Sidco,* supra; *Girard Investment Co. v. Bello,* 456 Pa. 220; 318 A.2d 718 (1974); *Bettinger v. Carl Berke Assoc., Inc.,* 455 Pa. 100, 314 A.2d 296 (1974); *Reading Aviation Service v. Bertolet,* 454 Pa. 488, 311 A.2d 628 (1973); *Jacobson & Co. v. Int. Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967); *Albee Homes, Inc.,* supra. Because the restrictive covenant in question was not geographically limited and P.D.I.'s operations were world-wide in scope, the lower court found it impossible to

imply a reasonable geographic limitation. Moreover, because Holdsworth's employment caused him to travel throughout the world, the court reasoned that the restrictive covenant would prevent Holdsworth from working as a salesman of peripheral card readers anywhere in the world. Thus, the court concluded that such a restriction placed an unreasonable hardship on Holdsworth as an employee and, accordingly, it refused to grant the preliminary injunction.

I agree that the record demonstrated a reasonable basis to support the lower court's refusal of a preliminary injunction. At the hearings, P.D.I.'s president conceded that both the corporation's operations and the restrictive covenant were worldwide in scope. Moreover, P.D.I. sought complete enforcement of the covenant. P.D.I.'s president specifically stated that the only two places in which he would not contemplate enforcement were Tibet and the North Pole.

Second, the lower court properly refused to imply a geographic limitation in the absence of an explicit limitation and in the face of P.D.I.'s demand for total enforcement. The lower court correctly distinguished those cases which have implied such geographic limitations. Those cases have involved employment contracts which either defined the geographic scope of the employer's operations or specified the territorial area of the employee's activities. *See Seligman v. Latz*, supra; *Plunkett Chemical v. Reeve*, 373 Pa. 513, 95 A.2d 925 (1953). Consequently, the courts could interpret those agreements as implying reasonable geographic limitations in the restrictive covenants. In the instant case, however, the lower court found neither a specific geographic limitation nor other language implying a reasonable geographic limitation. In short, the lower court reasonably determined that the restrictive covenant could not be limited and would have an inordinately harmful impact on appellee Holdsworth.[2] Consequently, the lower

---

2. The Dissenting Opinion rewrites the restrictive covenant by limiting its geographic scope to the United States, Europe, and Japan, those places to which Holdsworth travelled most frequently. Even apart from the undue hardship this would work on Holdsworth, there is additional authority contradicting such an approach. In *Reading*

court had reasonable grounds for refusing to grant the preliminary injunction.[3]

Because I find that there were apparently reasonable grounds to support the lower court's denial of a preliminary injunction, I would affirm the lower court. Accordingly, I concur.

SPAETH, Judge, in support of affirmance:

The facts in this case are fully set forth in Judge VAN der VOORT's opinion in support of reversal and in Judge HOFFMAN's opinion in support of affirmance. I, too, agree that the case must be affirmed, but for reasons somewhat different from Judge HOFFMAN's. Judge VAN der VOORT says that the restrictive covenant could be limited, and proceeds to write limitations into it. At 325. Judge HOFFMAN says that the covenant "could not be limited."

> *Aviation Services v. Bertolet*, supra, our Supreme Court recognized the potentially adverse consequences of courts rewriting restrictive employment covenants in order to characterize them as reasonable: "The objection to such practice is that it tends to encourage employers and purchasers possessing superior bargaining power over that of their employees and vendors to insist upon unreasonable and excessive restrictions, secure in the knowledge that the promise may be upheld in part, if not full." *Reading Aviation Services*, supra, 454 Pa. at 493, 311 A.2d at 630. *See also, Sidco*, supra, 465 Pa. at 605, 351 A.2d at 260; 14 Williston, Contracts § 1647C (3d ed. 1972).

**3.** The lower court's opinion bases its denial of the preliminary injunction exclusively on the fact that the injunction sought was not reasonably designed to abate the activity sought to be restrained. This is the fourth and most important prerequisite to injunctive relief. *See Bryant*, supra; *Sidco*, supra. Because all four requirements must be satisfied before a court will grant a preliminary injunction, the absence of any of the four requisite elements will preclude the grant of equitable relief. Accordingly, it is unnecessary to evaluate the other prerequisites to a preliminary injunction. However, I note that in three days of testimony, P.D.I. failed to establish any irreparable injury which could not be compensated by damages. P.D.I.'s president testified that since Holdsworth had left P.D.I. to work for True Data, customers had selected True Data card readers over P.D.I. card readers at least five times in five months and that in the six years that the two companies had been in business, this had never happened over a similar time period. However, P.D.I.'s president failed to establish any nexus between these unprecedented purchases and Holdsworth's breach of the restrictive covenant.

At 317. In my opinion, the covenant could be limited, but whether to limit it was within the lower court's discretion, and the court's decision not to limit it should not be disturbed.

### 1

I agree with Judge VAN der VOORT that the scope of a covenant not to compete may be limited by a court to ensure both that the duration and geographical scope of a covenant are reasonable, and that the covenant is neither unnecessary for the employer's protection nor unduly burdensome for the employee. It does not follow, however that this court is the court to impose such limitations. In my opinion, they should be imposed by the lower court, after evidence and findings of fact on such matters as the nature of the business in question and the employee's business experience. That is the way it was done in *Bettinger v. Berke Assoc., Inc.,* 455 Pa. 100, 314 A.2d 296 (1976), and *Jacobson & Co. v. Int. Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967). *And see Girard Investment Co. v. Bello,* 456 Pa. 220, 318 A.2d 718 (1974), where the Court divided: the majority upheld the decision that the covenant should not be enforced; Mr. Justice POMEROY, in dissent, would have remanded for findings on the basis of which a limited covenant would be enforced.

Furthermore, even if the record here were such as to make it appropriate for us to limit the covenant, we should not do so, for the issue of the propriety of an injunction is moot. The covenant provided that "[f]or a period ending one year after the end of my [Holdsworth's] employment with PDI, . . . I shall not . . . [enter into various types of employment]". Holdsworth left the employ of P.D.I. in November 1975.

### 2

Given the lower court's ability to limit the covenant, the question is whether its refusal to do so was error.

It is true, as Judge VAN der VOORT states, that "[a] contract between an employer and an employee which contains restrictive covenants against competition by the employee after termination of his employment, is valid and will be sustained unless the employee proves that the covenant constitutes an unreasonable or illegal restraint of trade. *Seligman and Latz of Pittsburgh, Inc. v. Vernillo*, 382 Pa. 161, 164, 114 A.2d 672 (1955)" At 323. *And see Jacobson & Co. v. International Environment Corp., supra; Plunkett Chemical Co. v. Reeve*, 373 Pa. 513, 95 A.2d 292 (1953). Applying this principle here, it would appear that the lower court erred when it granted the employee's motion "in the nature of a demurrer" at the close of the employer's evidence. Since the employee has the burden of proving the covenant unreasonable, should not the court have required the employee to have come forward with evidence?

In considering this question it must be borne in mind that a restrictive covenant is prima facie enforceable only if it is reasonable in time, reasonable in geographic extent, and reasonably necessary to protect the employer without imposing undue hardship on the employee. *See* cases cited *supra*. Here the covenant contained no geographic limitation. Because of this, a prima facie case was not presented, and the burden did not shift to the employee to demonstrate the unreasonableness of the covenant. It was therefore proper, I conclude, for the court to have decided against the employer without requiring the employee to come forward with evidence.

The absence of a geographic limitation did not, however, disable the employer from making out a case—as Judge HOFFMAN's opinion may suggest. Rather, the employer had at least two possible courses of action open to it.

First, the employer might have attempted to demonstrate to the court that under the factual circumstances of this case the absence of a geographic limitation was not unreason-

able.[1]  For example, the employer could have attempted to prove that its operations were in in fact worldwide, and that during his employment the employee had in fact traveled throughout the world.  On such proof it might be found that prima facie, at least, the limitation was not unnecessarily broad, so that the burden would then shift to the employee to show that even so, it was unduly burdensome for him.  It may be that it was the employer's intention to proceed in this manner.  If so, however, it did not succeed, for instead of showing that the employee had traveled throughout the world, its evidence showed that he had only traveled in the United States, and parts of Europe and Japan.

Alternatively, the employer might have requested only limited enforcement of the covenant, demonstrating by evidence in support of this request that such enforcement would be reasonable in consideration of the necessities of its business.  In such event, too, a prima facie case would have been made out, and the burden would shift to the employee to show that even as limited, the covenant was unduly burdensome for him.  Here, however, the employer specifically declined to adopt such a course of action, instead requesting complete enforcement.  As Judge HOFFMAN notes, the president of P.D.I. stated that the only two places that he would not seek enforcement of the covenant were Tibet and the North Pole.

Despite this sweeping request, the court could have looked to all of the surrounding circumstances to judge the reasonableness of the covenant and could have granted partial enforcement.  *Sidco Paper Company v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976); *Jacobson & Co. v. International Environment Corp., supra; Plunkett Chemical Co. v. Reeve, supra.*

> The man who wildly claims that he owns all the cherry trees in the country cannot be denied protection of the orchard in his back yard.  A restrictive covenant, when it

1.  The lower court reasoned that  ". . . Mr. Holdsworth's operations were admittedly worldwide; therefore, the court could not possibly be able to interpret a reasonable geographic limitation."  Lower Court Opinion at 4.  This is a non sequitur.

comes under the scrutiny of a court of equity, will be held to reasonable geographical and chronological boundaries, according to the realities of the situation. *Barb-Lee Mobile Frame Co. v. Hoot*, 416 Pa. 222, 224, 206 A.2d 59 (1965).

The point, it seems to me, is that whether to grant protection only as to some of the cherry trees is discretionary. Where, as here, an employer claims protection of all of the trees, the court may decline to give him protection as to any. *Cf. Girard Investment Co. v. Bello, supra.*

This sort of gratuitous overbreadth militates against enforcement because it indicates an intent to oppress the employee and/or to foster a monopoly, either of which is an illegitimate purpose. An employer who extracts a covenant in furtherance of such a purpose comes to the court of equity with unclean hands and is, therefore, not entitled to equitable enforcement of the covenant. *Sidco Paper Company v. Aaron, supra*, 465 Pa. at 599, 351 A.2d at 257.

Affirmed.

JACOBS, President Judge, joins in this opinion.

VAN der VOORT, Judge, in support of reversal:

Appellant Peripheral Dynamics, Inc. (P.D.I.) is in the business of manufacturing and selling computer devices known as peripheral card readers. Appellee Joseph S. Holdsworth was employed by appellant from August 1973 until November 1975 as national sales manager. While so employed, appellee traveled throughout the United States, Europe, and Japan, soliciting business for his employer. In May of 1974, appellee resigned to accept a similar position with a rival company; however, prior to the effective date of the resignation, he changed his mind and requested that P.D.I. continue to employ him. P.D.I. agreed, on condition that appellee sign an agreement (in the form of a letter from Holdsworth to P.D.I.) containing the following provision: "For a period ending one year after the end of my employment with P.D.I., for any reason whatsoever, I shall

not either directly or indirectly . . . become associated with Documation, Inc., True Data, Inc., Oki Bridge Products, Inc., Mohawk Data Sciences Inc., or any other person, firm, corporation or other entity which manufactures, sells or otherwise deals in computer peripheral card readers." The agreement also sought to prevent Holdsworth from soliciting P.D.I.'s customers for the benefit of any competing companies for a period of one year following the cessation of Holdsworth's employment with P.D.I. Mr. Holdsworth signed the agreement and was permitted to remain an employee of P.D.I.

On November 14, 1975, appellee Holdsworth voluntarily terminated his employment with P.D.I. and became an employee of appellee True Data, Inc. P.D.I. filed a complaint in equity to enjoin Holdsworth from continuing his employment with True Data and to otherwise require Holdsworth to comply with the terms of the employment agreement. Hearings were held on May 13 and 14 and June 9, 1976, and a motion in the nature of a demurrer was granted, denying the request for a preliminary injunction. Appeal was taken to our court from the order denying the injunction, appellant arguing that the lower court erred in finding that the restrictive employment covenant contained no geographical limitation and was not susceptible to the imposition of a reasonable geographical limitation, and that the lower court also erred in applying an improper presumption of unreasonableness. This position appears to be valid.

A contract between an employer and an employee which contains restrictive covenants against competition by the employee after the termination of his employment, is valid and will be sustained unless the *employee* proves that the covenant constitutes an unreasonable or illegal restraint of trade. *Seligman and Latz of Pittsburgh, Inc., v. Vernillo,* 382 Pa. 161, 164, 114 A.2d 672 (1955). In other words, the burden will be on the party asserting the illegality of the covenant to show how and why it is unlawful. *Harris Calorific Co. v. Marra,* 345 Pa. 464, 29 A. 64 (1942); *Holland v. Brown,* 304 Pa. 545, 156 A. 168 (1931); *Harbison-Walker*

*Refractories Co. v. Stanton*, 227 Pa. 55, 75 A. 988 (1910). In the case before us, the lower court erroneously placed the burden on plaintiff-employer, citing *Reading Aviation Service, Inc. v. Bertolet*, 454 Pa. 488, 311 A.2d 628 (1973) and *Girard Investment Co. v. Bello*, 456 Pa. 220, 318 A.2d 718 (1974) for the proposition that "a restrictive covenant in an employment contract will be presumed to be unreasonable without a geographical limitation." These two cases simply do not stand for the proposition stated. The restrictive covenant in *Reading* had no geographical *or* time limitation, and the Supreme Court found that the covenant placed an unconscionable burden on the employee's ability to pursue his chosen occupation, with restrictions that were "far greater than  .  .  .  reasonably necessary for the protection of the [the employer]." In *Girard*, a chancellor denied a preliminary injunction to enforce a restrictive employment covenant, holding that the general covenant not to compete was not reasonably necessary for the employer's protection, and also that, because of the overly broad geographic limitations, the contract constituted an undue hardship on the employee. The Supreme Court affirmed the chancellor's decision, but on the narrow ground that "under the circumstances, the covenant was not reasonably necessary for the employer's protection  .  .  . ." (The employee had been a branch manager of Girard Investment Co., and had left to start his own concern). Both *Reading* and *Girard* are distinguishable from the case before us, neither case refers to any presumption of unreasonableness, and I believe the lower court erred in applying such a presumption.

Employment contracts containing general covenants by an employee not to compete after the termination of his employment are prima facie enforceable if they are reasonably limited as to time and geographical extent, and they will be deemed "reasonably limited" if the restrictions are reasonably necessary for the protection of the employer while not imposing undue hardship on the employee. *Jacobson and Company, Inc., v. International Environment Corp.*, 427 Pa. 439, 452, 235 A.2d 612 (1967). In the case before us, appellee

Joseph Holdsworth had access to customer lists and information about P.D.I., which could be used by P.D.I.'s competitors. P.D.I. attempted to protect itself by restraining Holdsworth from working for its competitors and using his knowledge and information against P.D.I. for a period of one year. The period of time was reasonable, but other restrictions were too broad. The agreement between Holdsworth and P.D.I. specified that Holdsworth would not associate himself with four named companies (including True Data) "or any other person, firm, corporation or other entity which manufactures, sells or otherwise deals in computer peripheral card readers." The covenant would thus seem to restrict Holdsworth from working in any capacity for any company that dealt in any way with computer peripheral card readers. Furthermore, as the lower court noted, the agreement imposed no geographical limitations. The lower court noted that Holdsworth's operations were "worldwide," and the court therefore ruled that a reasonable geographical limitation could not be imposed by the court. I conclude that the covenant can be limited and, as limited, be enforced.

Mr. Holdsworth testified that his work for P.D.I. took him to Europe and Japan and throughout the United States. It would not be an undue hardship on Mr. Holdsworth to enjoin him from working for a period of one year for the four named P.D.I. competitors in the three geographical areas in which he formerly operated. Mr. Holdsworth did agree in writing, as a condition of his continued employment with P.D.I., not to take advantage for a period of one year of information obtained and contacts made by him while employed by P.D.I.[1] He should be held to this part of the agreement. It would be unreasonable however, to restrain Mr. Holdsworth from working for *any* company which might deal in some way with peripheral card readers. I would enforce the covenant to the extent that Mr. Holdsworth should be enjoined from working for True Data, Inc., and the three other companies named in the complaint, in Europe, Japan, and the United States, for a period of one year.

1. See *Sidco Paper Company v. Aaron*, 465 Pa. 586, 594, n. 7, 351 A.2d 250 (1976).

I would remand to the lower court in order that a preliminary injunction be issued in accordance with this opinion.

CERCONE and PRICE, JJ., join in this Opinion in Support of Reversal.