### In re INTEGRATED HEALTH SERVICES, INC., et al., Debtors.

### Rehabworks, Inc., Plaintiff,

### v.

### Rebecca A. Lee

### and

### Angela Wieczorek

### and

### NurseOne, Defendants.

### Bankruptcy Nos. 00–389(MFW) to 00–826(MFW).

### Adversary No. 01–9902(MFW).

United States Bankruptcy Court, D. Delaware.

June 6, 2002.

Robert S. Brady, Maureen D. Luke, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, Michael J. Torchia, Stephen C. Goldblum, Semanoff, Ormsby, Greenberg & Torchia, LLC, Jenkintown, PA, Charles P. Greenman, Stephen G. Rinehart, Parker Chapin, LLP, New York City, for Debtors.

Joanne B. Wills, Steven K. Kortanek, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, DE, Glenn Rice, William Silverman, Otterbourg, Steindler, Houston & Rosen, PC, New York City, for Unsecured Creditors.

R. Stokes Nolte, Nolte & Brodoway, Wilmington, DE, Steven L. Bloch, Braverman, Kaskey & Caprara, Philadelphia, PA, for Defendants.

### *MEMORANDUM OPINION*[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of RehabWorks, Inc. ("the Debtor") for a preliminary injunction against the Defendants, Rebecca A. Lee ("Lee"), Angela Wieczorek ("Wieczorek") and NurseOne, Inc. ("NurseOne") (collectively "the Defendants"): (1) to direct the Defendants to return all of the Debtor's confidential information and trade secrets in their possession; (2) to enjoin the Defendants from

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

using any of the Plaintiff's confidential or proprietary information; (3) to enjoin the Defendants from soliciting any employees or customers of the Plaintiff; and (4) to enjoin NurseOne from employing Lee or Wieczorek.

After hearing testimony and considering the parties' post-trial briefs, we grant, in part, the Debtor's Motion.

## I.  *FACTUAL BACKGROUND*

The Debtor is in the business of providing rehabilitation and nursing services and personnel to healthcare facilities.  It is a subsidiary of Symphony Health Services, Inc., which is itself a subsidiary of Integrated Health Services, Inc. ("IHS"). Through its affiliation with IHS, the Debtor has an entree to more than 1700 facilities nationwide.

Until her termination on December 14, 2001, Lee was the Senior Vice President of Operations of the Debtor.  She had been employed by the Debtor or Symphony in various positions for almost seven years. Ms. Lee had executed an employment agreement dated September 1, 1997, which had a term of three years.  Though she was given a subsequent agreement to sign in November, 2001, Lee did not execute it.

Until her termination on December 14, 2001, Wieczorek was Senior Vice President of Nurse Staffing for the Debtor.  She had been employed by the Debtor for almost seven years in various positions.  Wieczorek had an employment agreement dated November 25, 1999, which was still in effect as of the date of her termination.

The Debtor, together with IHS and Symphony, filed voluntary petitions under chapter 11 on February 2, 2000.  Subsequent to the bankruptcy filing, in February, 2001, Wieczorek, at the direction of the President of the Debtor (Sally Weisberg), began working on a project called NurseWorks.  That project contemplated the formation of a business to provide temporary nursing staff to nursing homes nationwide.  During 2001, Ms. Wieczorek conducted research, did market studies and prepared a business plan for Nurse-Works.  NurseWorks began operations, as a division of the Debtor, in May, 2001.

Sometime in 2001, Lee and Wieczorek began discussing a contingency plan in the event the Debtor's reorganization efforts were not successful.  They discussed their plans with another employee of the Debtor, Thomas Mignone.  Together, Lee, Wieczorek and Mignone discussed and prepared a business plan for a business called NurseOne which would directly compete with NurseWorks.  The business plan for NurseOne was prepared from the Nurse-Works business plan that Wieczorek had prepared for the Debtor and was virtually identical to it in many respects.  Mignone prepared projections for NurseOne based on actual results of operations for Nurse-Works.  An attorney was consulted, NurseOne was incorporated and the NurseOne business plan was submitted to a bank for financing.

On December 10, 2001, Weisberg discovered the existence of NurseOne and the activities of Lee, Wieczorek and Mignone. She confronted Wieczorek and Mignone about their activities and offered to let them remain with the Debtor if they signed new employment agreements confirming their loyalty to the Debtor.  Mignone signed such an agreement; Wieczorek asked for time to consider it.  Since Lee was on vacation, Weisberg did not meet with her until December 17, 2001. At that time, both Lee and Wieczorek were terminated by the Debtor (as of December 14, 2001) for cause.

Subsequently, the Debtor filed the instant adversary proceeding against the Defendants.  A hearing on the Debtor's

Motion for a Preliminary Injunction was held on April 23 and 24, 2001. Briefs were filed on May 1 and 14, 2001.

## II.  *JURISDICTION*

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A) and (O).

## III.  *DISCUSSION*

██ In considering whether to grant a preliminary injunction, courts consider four factors:

1) the likelihood that the plaintiff will prevail on the merits of its claim at the final hearing;

2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of;

3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and

4) the public interest.

*The Pitt News v. Fisher*, 215 F.3d 354, 365–66 (3d Cir.2000); *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1438 (3d Cir.1994); *Merchant & Evans, Inc. v. Roosevelt Bldg. Products Co., Inc.*, 963 F.2d 628, 632 (3d Cir.1992); *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 191–92 (3d Cir.1990). The court should issue the injunction only if the plaintiff produces evidence that all four factors favor granting the injunction. *Pitt News*, 215 F.3d at 365; *Duraco*, 40 F.3d at 1438; *Merchant & Evans*, 963 F.2d at 632–33; *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987).

### A.  *Likelihood of Success on the Merits*

The Debtor asserts that it has established that it will be able to succeed on the merits of its complaint. The Debtor asserts that Lee and Wieczorek have breach-ed numerous provisions of their employment agreements and should be enjoined from further breaches. The Defendants argue that the agreements are not enforceable and that, even if they were, the Defendants have not breached any of their valid provisions.

#### 1.  *Validity of Employment Agreements*

██ Wieczorek asserts that her agreement is not effective because it was executed one year after she was employed and therefore lacks consideration. The Debtor argues, however, that the agreement is supported by consideration, namely, certain severance benefits. (Exhibit P–16 at § 1.) Wieczorek argues, nonetheless, that those benefits are illusory since they are not payable in the event that she is fired for cause. We disagree. The agreement is not illusory, Wieczorek would be entitled to severance if she were not fired for cause. The agreement would be illusory from the Debtor's perspective if Weiczorek were able to avoid the non-compete and other confidentiality provisions of that agreement simply by violating those provisions and being fired for cause. Consequently, we conclude that Weiczorek's employment agreement is enforceable.

Lee also argues that her employment agreement is not valid because it is not limited in time or geography. The agreement states that the restrictive covenants would apply "at all times following termination." She asserts that such an unlimited restrictive covenant is unreasonable and unenforceable. *See, e.g., Reading Aviation Service, Inc. v. Bertolet*, 454 Pa. 488, 491, 311 A.2d 628, 630 (1973); *Martin Industrial Supply Corp. v. Riffert*, 366 Pa.Super. 89, 94, 530 A.2d 906, 908 (1987); *Peripheral Dynamics, Inc. v. Holdsworth*, 254 Pa.Super. 310, 324–25, 385 A.2d 1354, 1361–62 (1978). Except with respect to

the non-compete provisions of her contract, Wieczorek's restrictive covenants similarly appear to be unlimited in time or geography.

The Debtor argues, however, that the provisions are necessary to prevent irreparable harm to it. Further, it asserts that if the court concludes the restrictive covenants are unreasonable, it should modify them to be reasonable rather than eliminate them. *See, e.g., Sidco Paper Co. v. Aaron*, 465 Pa. 586, 594–95, 351 A.2d 250, 254–55 (1976) (court may blue line non-compete agreement to reasonable geographic and temporal limits).

To evaluate this argument, however, we must consider the effect of the lack of any limitation on the legitimate rights of the parties. To do so we must review each restrictive clause separately.

### 2. *Non-compete*

Lee asserts that by its very terms, her employment agreement does not prevent her from competing with the Debtor. The Debtor apparently concedes that and seeks only an injunction which prevents her from using any of its trade secrets or from soliciting any customers or employees. This is supported by the agreement. (Exhibit P–15 at §§ 4.2 & 4.3.)

█ Under the Wieczorek employment agreement, the non-compete provisions extend for six months from termination of employment unless the court enters an injunction in which case the six months runs from the date the injunction is entered. (Exhibit P–16 at §§ 3(a) & 7.) The Debtor argues that the restriction is reasonable since it is limited in time and must be enforced as written. We disagree. We interpret section 7 as intended to protect the Debtor in the event that Wieczorek breached that provision (by competing with the Debtor shortly after leaving its employ) and continued to breach it until an injunction was entered. In that instance measuring the six months from entry of the injunction would be reasonable. In this case, however, the facts do not support such an extension. Wieczorek testified that since she was terminated, she has taken no action to compete with the Debtor or to solicit employees or customers. Consequently, we conclude that any injunction against Wieczorek from competing with the Debtor should not last longer than six months from her termination or June 14, 2002.

### 3. *Trade Secrets*

The Debtor argues that, pursuant to their employment agreements, Lee and Wieczorek are precluded from using or disclosing confidential information or trade secrets of the Debtor, including the information contained in the NurseWorks business plan. (Exhibits P–15 at § 4.2(a)–(f) & P–16 at § 2(a)–(f).) These provisions are designed to protect the Debtor's property and should be enforced indefinitely since the Defendants have no legitimate right to use the Debtor's proprietary information.

The Defendants dispute the Debtor's allegations that they have violated their employment agreements or that they preclude the Defendants from pursuing the NurseOne business plan. They argue that none of the information in the NurseOne business plan is a trade secret because all of it is in the public domain[2] except the

---

**2.** For example, the Defendants argue that the list of customers is not a trade secret since they are readily ascertainable from the yellow pages and they are not the exclusive custom-

ers of the Debtor (since many nurse staffing agencies are used by each customer). Nor are the rates for nurses secret since they can be readily obtained from the classified section

research done by Wieczorek whereby she misrepresented herself as a nursing home administrator to obtain rates and other information from competitors. The Defendants apparently argue that the latter is not protected because the Debtor stole that information and did not pay for it.

■■■ To be entitled to an injunction against use or disclosure of information under Pennsylvania common law, the movant must show: (1) that the information constitutes a trade secret; (2) that it was of value to the employer and important to the conduct of its business; (3) that by reason of discovery or ownership the employer had the right to use of the secret; and (4) that the secret was communicated to the defendant while employed in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer. *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1255 (3d Cir.1985); *Felmlee v. Lockett*, 466 Pa. 1, 8, 351 A.2d 273, 277 (1976). Courts in Pennsylvania have adopted the factors set forth in the Restatement of Torts § 757, comment b, to determine the existence of a trade secret, to wit: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard against the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information;

and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *SI Handling*, 753 F.2d at 1256.

We disagree with the Defendants' assertion that the information taken by them are not the Debtor's trade secrets. It is not necessary to rely on the Restatement of Torts or the common law definition of trade secret to determine whether an injunction should issue in this case. The information contained in the NurseOne business plan (which was derived from the NurseWorks business plan) contains the exact information which Lee and Wieczorek agreed to keep confidential under the express terms of their employment agreements. Specifically, it includes pricing information, information about potential suppliers, marketing information or programs of the Debtor, and customer information. (Exhibits P–15 at § 4.2 & P–16 at § 2.)

■■ Even under Pennsylvania decisional law the NurseWorks business plan would be a protected trade secret. While some of the information came from public sources, it is the compilation of that diverse information in the format of the business plan which constitutes confidential trade secrets. This took considerable time, expense and effort by the Debtor.[3]

Furthermore, the business plan for NurseWorks contains information that is not in the public domain: namely, the Debtor's analysis of how it could enter the market of supplying nurses to nursing homes. It contains the results of the Debtor's research into the viability of such a venture and a roadmap for how it could

---

of the local papers. Finally, the Defendants argue that the very format of the business plan is not proprietary since the Debtor used a template for a business plan which it obtained from the Small Business Administration's website.

3. Ms. Wieczorek did not testify that in the several months that she worked on this project for the Debtor she was not expending a considerable amount of time and energy. The business plan itself attests to her efforts.

penetrate the market. It is the result of the Debtor's research and thought processes as to how to accomplish that goal that is a trade secret entitled to be protected.

The Defendants' assertion that the information is not a trade secret because the Debtor did not pay anything for it is incorrect. The Debtor did pay for the business plan by paying the salary of Wieczorek for developing that plan. The fact that the plan was developed in-house by using the Debtor's own resources does not negate its nature as a trade secret.

█ The Defendants assert that the NurseWorks business plan was not kept confidential because Weisberg testified that she kept the plan in an unlocked drawer of her desk. However, an executive's failure to lock her desk drawer does not amount to public dissemination that would otherwise defeat the confidential nature of a company's trade secrets. Evidence was presented that the Debtor did not disseminate the business plan to the public and kept it limited to those who actually worked on the project.

█ Since the Defendants have no legitimate right to the use of the Debtor's trade secrets and, specifically, the NurseWorks business plan, the restrictive covenants barring their use or dissemination of that information will be enforced by way of an injunction. Further, we conclude that, with respect to the use of that confidential information, it is reasonable for the Debtor to insist that that information remain confidential indefinitely. The Defendants will be precluded from using the NurseWorks business plan (including the NurseOne business plan which was derived from it)

or any confidential information they received while working at the Debtor.

### 4. Non-solicitation of Employees

█ The Debtor asserts that both Lee and Wieczorek are barred by their employment agreements from soliciting employees of the Debtor. (Exhibits P–15 at § 4.3(b); P–16 at § 4.) The Defendants do not disagree but insist they have not done so. There was considerable testimony as to whether Mignone solicited Lee and Wieczorek into the NurseOne scheme or vice versa.

It is not necessary for us to decide who did what. The employment agreements preclude solicitation of employees and they will be enforced. The only issue is the length of the non-solicitation period. Neither agreement limits the non-solicitation of employees to any period from termination or the issuance of an injunction. (Exhibits P–15 at § 4.3, P–16 at §§ 3(b) & 4.) We agree with the Defendants that an unlimited restriction is unreasonable. We conclude that a reasonable limitation in this case would be that set forth in Wieczorek's employment agreement, namely six months.[4] Again, we do not think it is reasonable to extend it from the injunction because there is no evidence that either Lee or Wieczorek solicited any employee of the Debtor after their termination.

█ The Defendants also argue, however, that the restriction should not extend to nurses. Although they may be termed "employees" by the Debtor, they are not in the true sense. None are working exclusively for the Debtor, but instead are used by other competing nurse staffing agencies. We agree with the Defendants that, to the extent a nurse is not an exclusive employee of the Debtor, the Debtor has no

---

**4.** It appears that the Wieczorek employment agreement is similar to the one that was given to Lee to execute in November, 2001, since the Debtor asserts that all senior executives were asked to execute new employment agreements at that time.

legitimate interest in precluding anyone else from soliciting that nurse for employment.

### 5. *Non-solicitation of Customers*

█ The Debtor similarly asserts that both Lee and Wieczorek are barred by their employment agreements from soliciting any customers of the Debtor. (Exhibits P–15 at § 4.3(a); P–16 at § 3(b).) The Defendants argue that, like the nursing staff, the Debtor's have no legitimate interest in precluding them from soliciting customers. None of the customers of the Debtor are under an exclusive contract with the Debtor, but instead often use several nurse staffing agencies at once to assure that they are able to fully staff their facilities at all times. Further the Defendants argue that the identities of the customers are a matter of public knowledge and can be garnered simply by perusing the yellow pages or classified ads.

We agree with the Defendants and conclude that the Debtor cannot restrict them from soliciting customers who are not under an exclusive arrangement with the Debtor, so long as they use non-confidential information in doing so.

### B. *Irreparable Harm*

The Debtor has established irreparable harm in the absence of issuance of an injunction. The Defendants have already taken substantial steps to set up a business using proprietary information of the Debtor to compete with it directly. It will be difficult, if not impossible, to determine what damages such competition causes to the Debtor. Injunctive relief is, therefore, appropriate.

In addition, Lee and Wieczorek both acknowledged in their employment agreements that violation of them would irreparably harm the Debtor. (Exhibits P–15 at § 4.7 & P–16 at § 7(a).)

### C. *Prejudice to the Defendants*

The Defendants argue that they will be prejudiced by the entry of an injunction which will make it difficult for them to get employment. This is not credible. The injunction would simply prevent the Defendants from doing what they are prohibited from doing: taking confidential business information from the Debtor and using it to compete with the Debtor. It will not prevent them from finding employment in their field.

### D. *Public Interest*

In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests. *American Film Tech., Inc. v. Taritero (In re American Film Tech., Inc.)*, 175 B.R. 847, 849 (Bankr.D.Del.1994); *Gathering Restaurant, Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Restaurant, Inc.)*, 79 B.R. 992, 999 (Bankr.N.D.Ind. 1986).

In this case, the Debtor has a legitimate interest in protecting its business from the improper actions of its former employees. Inability to do so may adversely affect the Debtor's ability to reorganize.

The Defendants have cited no public policy which would support their use of the Debtor's confidential business plans for their own individual purposes, directly in competition with the Debtor.

### IV. *CONCLUSION*

For the foregoing reasons, we will grant in part the Debtor's motion for a preliminary injunction.